## SPARKS v. JOHNSON. (No. 739.)

(Court of Civil Appeals of Texas. Beaumont.
Dec. 6, 1921.)

1. Witnesses ☞242—Question held one to re-
fresh memory, and not to impeach witness.

A question, "Is it not a fact that when
you met T., the plaintiff, * * * that T.
told you he had rented the place, but that you
were a white man and he was a negro and
did not wish to antagonize you, but that he
was going to make M. J. pay him whatever
damages he may suffer?" *held* not open to the
objection that it was an attempt by plaintiff to
impeach his own witness, being proper to re-
fresh the witness' memory.

2. Witnesses ☞321, 400(1)—Party may im-
peach or contradict own witness on material
point.

A party may impeach his own witness un-
der certain circumstances in any way ex-
cept by showing his bad reputation for truth
and veracity or by such general evidence as
would show the witness to be unworthy of be-
lief, and he can, either by the witness him-
self, or by other witnesses for that purpose,
contradict him on a material point, even
though not surprised by the testimony of the
witness.

3. Evidence ☞271(17), 317(18)—Testimony
as to decedent's declarations held self-serv-
ing and hearsay.

In an action for damages for breach of oral
contract to rent a farm to plaintiff, where de-
fendant died before trial, testimony of third
person that defendant told him that he had
not rented the place to plaintiff was hearsay
and self-serving and inadmissible.

Appeal from Nacogdoches County Court;
J. M. Marshall, Judge.

Action by Tobe Sparks against Matthew
Johnson. Judgment for defendant, and plain-
tiff appeals. Reversed and remanded.

S. M. Adams, of Nacogdoches, for appel-
lant.

V. E. Middlebrook, of Nacogdoches, for ap-
pellee.

HIGHTOWER, C. J. The appellant,
Sparks, was the plaintiff below, and brought
this suit against the appellee, Johnson, for
the recovery of damages, alleging, substan-
tially, that about October 1, 1917, he and the
appellee entered into a verbal contract, by
the terms of which appellee contracted and
agreed to rent and lease to appellant, for
the year 1918, a certain 100-acre farm in
Nacogdoches county, at that time owned by
the appellee. Appellant then alleged, sub-
stantially, that appellee breached the con-
tract and sold the farm, some time later,
to one Eph Coon, to whom possession of the
farm was delivered, and that appellant was
deprived thereby of the use of the farm. He
then alleged, substantially, that he was to
pay appellee under the verbal contract a
cash rent of $200 for the farm during the
year 1918, and that by reason of appellee's
breach of the contract in selling the farm
and denying him the possession thereof he
was forced to rent another farm of no great-
er value, for which he was compelled to pay
a much larger rent than he had agreed to
pay appellee, to wit, $628, and he prayed
judgment for the difference between the price
he agreed to pay appellee as rent and the
price he was compelled to pay for the farm
he procured.

From the record as presented, it appears
that the main contention and fight between
the parties below was as to whether appellee
contracted, absolutely and unconditionally,
to rent appellant the farm for the year 1918,
or whether his agreement to do so was mere-
ly upon the condition that he did not sell
the farm before the first of the year 1918.
It was appellant's contention that the verbal
contract was absolute, and that there was
no understanding or condition to the effect
that he was to have the farm only in the
event that appellee did not sell the same,
while, on the other hand, appellee strenuous-
ly contended that the contract was that ap-
pellant should have the farm for the year
1918, provided appellee did not sell it before
that time.

The case was tried with a jury, and upon
a special issue submitted the jury found,
in effect, that appellee did not agree absolute-
ly to rent the farm to appellant for the year
1918, but, as contended by appellee that the
agreement was to rent appellant the farm,
provided appellee should not sell it. Upon
the verdict so rendered judgment was en-
tered in favor of appellee.

Appellee has filed objections to the con-
sideration of appellant's brief, contending
that the same is not in compliance with the
rules for briefing, but upon consideration of
the matter we discover that the objections
interposed by appellee to the brief have ref-
erence to the rules of briefing before the
amendment by the Supreme Court, which
took effect September 1, 1921. Appellant's
brief is prepared under the new rules, and
was filed since such rules took effect, and as
prepared is a substantial compliance with
those rules.

[1, 2] On the trial, appellant introduced
as his first witness Eph Coon, a white man,
to whom appellee sold the farm in question,
and proved by Mr. Coon, substantially, that
he was the man who purchased the farm
from appellee, and the fact that Mr. Coon
took possession and worked the farm during
the year 1918, and, further, the character
and quantity of crops raised by him on the
farm, and the value of such crops. Appel-
lant did not further interrogate the witness,
but thereupon turned him over for cross-
examination by the attorney for appellee.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Among other things testified to by Coon, while being questioned by the attorney for the appellee, was the following:

"When I moved my first load of household goods to the place that I bought from Matthew Johnson, I met Tobe Sparks in the Nacogdoches and Henderson road near Allen Rhodes' place, and he [meaning Tobe Sparks] told me that he had not rented the place from Matthew Johnson."

When the witness was again turned back for further interrogation by the attorney for appellant, the latter propounded the following question to Mr. Coon:

"Mr. Coon, is it not a fact that when you met Tobe Sparks, the plaintiff, in the Nacogdoches and Henderson road near Allen Rhodes' residence, Tobe told you he had rented the place, but that you were a white man and he was a negro and did not wish to antagonize you, but that he was going to make Matthew Johnson pay him whatever damages he may suffer?"

This question was objected to by the attorney for the appellee on the ground, substantially, that it was an attempt by appellant to impeach his own witness, and that to permit him to do so would be improper, and this objection was sustained by the trial court, and appellant's attorney saved the point by proper bill of exception. The bill shows that appellant's attorney expected the witness Coon to answer in the affirmative the question that had been propounded to him, as before shown, had he been permitted to do so. It is apparent from the court's qualification of the bill that he sustained the objection interposed to the question, because the court was of the opinion that to permit appellant's attorney to ask the question and draw from the witness the expected answer would be, in effect, to impeach appellant's own witness. It is clear to us that such would not have been the effect of the witness' answer had he answered the question as appellant's attorney expected him to answer it, but that the real purpose in asking the question of the witness was to refresh his memory only as to the conversation he had with the plaintiff, Sparks, at the time mentioned. The bill shows affirmatively that the witness was expected to answer in the affirmative the question as propounded by appellant's attorney, which would not at all have impeached him, but would, in effect, have but refreshed his memory as to the conversation had with the plaintiff, Sparks. It was certainly the right of appellant, if he could, to so refresh Mr. Coon's memory. This record reflects the fact that Mr. Coon is a white citizen of high standing in Nacogdoches county, and it is therefore probable that had the question refreshed his memory and he had answered the same in the affirmative, the result of the trial might have been different. But even if to have permitted the question and the expected answer would have had the effect to directly contradict the witness Coon, still appellant had such right, even if Mr. Coon was appellant's witness. Expressions are sometimes found in the reports, to the effect that a party cannot impeach his own witness. We do not understand the rule to be so broad. On the contrary, it has been held by the appellate courts of this state, in a number of cases, that a party may impeach his own witness under certain circumstances in any way except by showing his bad reputation for truth and veracity, or by such general evidence as would show the witness to be unworthy of belief. A party is prohibited from doing this upon the theory that when he puts a witness on the stand he vouches for his veracity, etc., and therefore he should not be permitted to show his own witness to be otherwise, by showing his general reputation for truth and veracity to be bad, or by such general evidence as would have the same effect, but certainly a party may contradict his own witness on a material point, if he can, either by the witness himself or by other witnesses for that purpose, and this is so even though the party may not be surprised by the testimony of the witness. Western Union Tel. Co. v. Vickery, 158 S. W. 792.

In Jones on Evidence, § 857, 1912 Ed., it is said:

"The general rule that one cannot impeach his own witness must not be understood to imply that the party is bound to accept such testimony as correct. On the contrary, it is very clear that the one producing the witness may prove the truth of material facts by any other competent evidence, even though the effect of such testimony is to directly contradict his own witness. * * * It has been well said that, if the other rule should prevail, 'Every one would be at the mercy of his own witnesses, and, if the first witness sworn should swear against him, he would lose the testimony of all the rest. This would be a perversion of justice.'"

If a party may contradict his first witness in a material respect, by the testimony of other witnesses for that purpose, surely he would have the right to have the witness himself contradict his first statement, which may be prejudicial to such party. But, as we have said above, the purpose of appellant in asking the question objected to, as disclosed by the bill, was really to refresh Mr. Coon's memory, and not for the purpose of either contradicting or impeaching him, in the general acceptation of those terms. The court was in error in sustaining the objections interposed to the question, and the assignment must be sustained.

[3] Before the trial of the case below, the defendant, Johnson, had died, and therefore was not present to testify on the issue as to whether he made the contract with appellant, as claimed by him. The witness Coon,

while on the stand, was permitted, over objection of appellant, to testify as follows:

"I had a conversation with Matthew Johnson at my house, and the day of the month I do not remember, but after I moved on the place, and some time in the fall of 1917, after Sparks says he rented it. We were alone at the time, and Matthew told me that he had not rented the place to Tobe Sparks, but had been talking to Tobe Sparks about renting the place, and told Tobe he would rent the place to him if he did not sell it."

This testimony was strenuously objected to by counsel for appellant, the objections being that the same was hearsay, and that such declarations, if made by Johnson, were self-serving, etc. The objection was overruled by the trial court, and the quoted testimony admitted before the jury.

Citation of authority is not needed to sustain the contention that the evidence objected to was but hearsay testimony, and notwithstanding the fact that the defendant, Johnson, was dead, it was not admissible under any rule of evidence that we know of. The declaration, if made by Johnson to the witness Coon, was also self-serving, having been made after the controversy or contention between the parties had arisen. The court erred in admitting the evidence over appellant's objection, and, the testimony being highly material to the issue being tried, and prejudicial to appellant, it cannot be claimed that the error was harmless.

The points we have discussed are raised by the first and second assignments of error, and both such assignments are sustained, and the judgment will be reversed, and the cause remanded; and it is so ordered.

---

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes