**SOUTH TEXAS COACHES, Inc., v. EAST-LAND et al.**

No. 12077.

Court of Civil Appeals of Texas. Dallas.

Jan. 18, 1937.

Rehearing Denied Feb. 13, 1937.

they found that, at and immediately prior to the collision, defendant's bus was being operated at a speed in excess of forty miles per hour, and that same was a proximate cause; that the failure of the driver of defendant's bus to slow down its speed to a reasonable rate was negligence and a proximate cause; that the bus was being driven on the left side of the highway; that such act was negligence and a proximate cause; that A. M. Eastland, deceased, was discovered to be in a perilous position by defendant's bus driver in time so that, by the exercise of ordinary care in the use of all the means at hand consistent with safety to himself and passengers in the bus, he could have avoided the collision, but that he failed to exercise ordinary care, and that such failure was a proximate cause; that at and immediately prior to the collision, the bus was being operated on a schedule promulgated by defendant requiring the driver to operate at a speed in excess of forty miles per hour; that such operation was a proximate cause, and a reckless disregard of the rights of the deceased, amounting to gross negligence. The jury also found that the collision was not the result of an unavoidable accident; that immediately preceding the collision, deceased was not operating his car at a speed in excess of 45 miles per hour; that he did not fail to keep a proper lookout for the bus as he approached the intersection; that he did not fail to slow his car down to a reasonable rate of speed as he approached the intersection; that, in failing to sound his horn as he approached the intersection, he was not guilty of negligence; that he did not attempt to turn or change the course of his car on the public highway at the intersection, and did not fail and refuse to slow the speed of the car to a reasonable rate after discovering defendant's bus on the highway.

The jury found actual damages, as follows: In favor of Mrs. Mary L. Eastland (widow), $13,000; in favor of Mary Ella Murphy (daughter), $5,000; in favor of Mrs. Mary L. Eastland for funeral expenses of deceased, $529.25, and in her favor for other expenses incurred on account of the injury to and death of her husband, as follows: For ambulance $25, for services of physician (Dr. Nash) $25, and for hospitalization $25, for services of a nurse $14, and for a tombstone as a marker for the grave of the deceased $62.50. In ad-

Price & Christopher, of Fort Worth, and Eckford & McMahon, of Dallas, for appellant.

D. A. Frank and Muse & Muse, all of Dallas, for appellees.

LOONEY, Justice.

Mrs. Mary L. Eastland, widow of A. M. Eastland, and Mrs. Mary Ella Murphy, only surviving child of deceased, joined by her husband, Walter Murphy, sued South Texas Coaches, Inc., to recover both actual and exemplary damages for the death of the husband and father, from injuries received in a collision between a five-passenger sedan in which he was traveling and a passenger bus operated by defendant, alleged to have resulted from defendant's negligence.

The material issues framed by pleadings are fairly indicated by the questions propounded to the jury, in response to which

dition to actual damages the jury found exemplary damages in favor of Mrs. Mary L. Eastland $1,100, and in favor of Mrs. Mary Ella Murphy $400.

The court rendered judgment for plaintiffs in accordance with the verdict of the jury; the defendant gave notice of and perfected its appeal, superseding the judgment, after its motion for a new trial was overruled.

The case is before us on 118 assignments, reduced to 55 propositions. These will not be discussed in the order presented, and some, deemed without merit, will not be discussed at all.

■ Appellant insists that the court erred in failing to instruct a verdict in its favor, against Mrs. Mary Ella Murphy (and husband), in that, being an adult married daughter of deceased, 36 years of age and not dependent upon him, in the absence of evidence showing that, after marriage she had ever received anything of value from her father, or a reasonable probability that he would have contributed anything of value to her had he lived, she was not entitled to recover.

We sustain this contention. Damages recoverable by a married daughter for the death of her father, under the provisions of the statute, are for the pecuniary loss sustained, and not as solace for grief or the loss of society. As disclosed, Mrs. Murphy was in no wise dependent upon her father, hence in the absence of a showing of a reasonable expectation of receiving from him future pecuniary benefits had he lived, she failed to make a case for either actual or exemplary damages; therefore, as to her, the court should have instructed a verdict for appellant. International & G. N. R. Co. v. De Bajligethy, 9 Tex.Civ.App. 108, 28 S.W. 829, 830; Missouri, K. & T. R. Co. v. James, 55 Tex.Civ.App. 588, 120 S.W. 269; McGown v. International & G. N. R. Co., 85 Tex. 289, 20 S.W. 80; Rio Grande, E. P. & S. F. R. Co. v. Lucero (Tex.Civ.App.) 54 S. W.(2d) 877; St. Louis, A. & T. R. Co v. Johnston, 78 Tex. 536, 15 S.W. 104, 106; St. Louis S. W. R. Co. v. Bishop, 14 Tex. Civ.App. 504, 37 S.W. 764; Texas Employers' Ins. Ass'n v. Birdwell (Tex.Civ. App.) 39 S.W.(2d) 159, 160.

Defendant contends (proposition No. 1) that the trial court erred in refusing its request for an instructed verdict, because deceased was guilty of negligence, causing or contributing to his death, as a matter of law.

We will here summarize the evidence bearing upon the issues of negligence and contributory negligence, the cumulative effect of which being substantially as follows: The collision was between a passenger bus belonging to defendant and a five-passenger sedan driven and occupied alone by deceased. The bus was of about 25-passenger capacity, weighed about 11,-000 pounds unloaded, and at the time was carrying the driver and 5 to 7 passengers; the sedan weighed about 3,000 pounds. The collision occurred a few miles west of the City of Dallas at the intersection of Industrial boulevard and West Mourland drive, public highways; however, Industrial boulevard carried the most traffic. These highways cross at practically right angles, the boulevard runs east and west, and West Mourland drive north and south. The collision occurred slightly after 6 p. m. June 30, 1933, while the bus was proceeding east toward Dallas on Industrial boulevard, and deceased was driving north on West Mourland drive. The intersection is in the midst of open territory, without trees, buildings, or other objects to obstruct the view of either driver; in fact, the driver of the bus testified that he saw the Eastland car approaching at a distance of at least 200 yards from the intersection. Those who witnessed the collision were three passengers in the bus—Mr. Lloyd, Miss Lou Blumberg, Mr. Kuttler—and the driver of the bus (Mr. Easley), also a Mr. Miller, who was in a car driving west on Industrial boulevard, facing the bus; the section of West Mourland drive on which Mr. Eastland was driving being in plain view, to the left of Mr. Miller. The testimony is conflicting at points, but justifies the conclusion that, as it approached the intersection, the bus was driven at an excessive and illegal rate of speed, that is, between 55 and 60 miles per hour; that this speed was not diminished nor the signal horn sounded, until the bus was within from 100 to 150 feet of the intersection; and that, simultaneously with the sounding of the horn, the driver made his first effort to slow down. There is also conflict in the evidence as to the speed of the Eastland car as it approached the intersection, and as to whether or not deceased hesitated and turned his car somewhat to the left and back to the right, and then accelerated speed and went forward. However that

may be, the evidence warrants the conclusion that deceased was not traveling in excess of 45 miles per hour; that he did not lessen or slacken speed or hesitate or turn as he reached the intersection, but proceeded to and upon the intersection, and had passed its center when struck by the bus. The evidence is ample to sustain the conclusion that, had the bus driver slackened speed, as much even as five miles per hour, or turned the course of the bus to the right three or four feet, which could have been done with safety, the collision would not have occurred. The left front of the bus struck the left rear portion of the Eastland car, lifted it from the surface, and knocked it clear of the pavement from 25 to 30 feet, where it was found upright, although turned around and in a wrecked condition, as revealed by the photographs, attached to the statement of facts. Mr. Eastland, being thrown from the car, was found lying about 15 feet east of the car, in an unconscious condition and practically dead, expiring soon after being carried to the hospital. The bus was running at such speed that, after the collision, it left the pavement diagonally in a northeast direction on the left side of the road, passing over a shallow ditch, and came to rest about 220 yards from the point of collision.

As bearing upon the relative rights and obligations of the drivers of these vehicles, it is worthy of note that defendant was required by law to have its bus equipped with a suitable horn or other signaling device, and it was the duty of the driver, whenever necessary, to sound the signal as warning of danger (P.C. art. 796); furthermore, it was the duty of the bus driver, approaching the intersection in question, to have yielded the right of way to Mr. Eastland, who was approaching the intersection from the right of the bus (P. C. art. 801, subd. (E)); and the failure of the driver to comply with either statutory requirement was negligence per se.

As the findings of the jury on the issues of negligence and contributory negligence were warranted by the evidence just summarized, we overrule all assignments and propositions challenging the sufficiency of the evidence to sustain either finding; however, the issues as to gross negligence and the right of the plaintiff to recover exemplary damages are not included in the above observation, but will be considered separately further on in the opinion.

Error is assigned on the action of the court in allowing the jury to fix the amount of doctor and hospital bills and funeral expenses made necessary by reason of the injured condition and death of Mr. Eastland, no contention being made that these charges were not reasonable, but that they were not recoverable as damages arising under the death statute (Vernon's Ann.Civ.St. art. 5525).

We overrule this contention. Our appellate courts have repeatedly held that, in an action for wrongful death, the recovery may include reasonable medical and other expenses incurred by the beneficiary for treatment and proper care, prior to the death, as well as reasonable funeral expenses, including a monument or grave marker suited to the condition in life of the deceased. City of Galveston v. Barbour, 62 Tex. 172, 50 Am.Rep. 519; Gulf. C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 239, 115 S.W. 260; Richardson v. McCloskey (Tex.Com.App.) 276 S.W. 680; Smith v. Farrington, 117 Tex. 459, 6 S.W.(2d) 736; Temple Lumber Co. v. Living (Tex Civ.App.) 289 SW. 746, 749; Jenney v. Jackson (Tex.Civ.App.) 46 S.W.(2d) 418; Humble Oil & Refining Co. v. Ooley (Tex. Civ.App.) 46 S.W.(2d) 1038; 33 Tex.Jur. 139, 140, §§ 94, 95, and authorities there cited.

In view of the contention of the defendant that the court erred in its submission as to the measure of damages, also that the verdict allowing Mrs. Eastland $13,000 is grossly excessive, evidencing bias and prejudice on the part of the jury, we deem it necessary to set out at length the issues, as follows: "Special Issue No. 13. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiffs, Mrs. Mary L. Eastland and Mrs. Mary Ella Murphy for the damages, if any, they have sustained by reason of the death of A. M. Eastland? You will answer the foregoing special issue by stating in Dollars, if any, and cents, if any, the amount, if any you find, and will apportion such damages, if any you find, between Mrs. Mary L. Eastland and the said Mrs. Mary Ella Murphy, in accordance with such damages, if any you find, each sustained, letting the form of your answer be to: (names of the plain-

tiffs mentioned). In arriving at your answer to this special issue, you will take into consideration only the pecuniary benefits, if any, that Mrs. Mary L. Eastland and Mrs. Mary Ella Murphy would have received from the said A. M. Eastland, had he not been killed." As heretofore stated, the jury found in favor of Mrs. Eastland the sum of $13,000.

We think the admonition given the jury, that is, that in assessing damages they should take into consideration only the pecuniary benefits, if any, Mrs. Eastland would have received from her husband had he not been killed, was not only correct, but adequate; nor do we think the verdict excessive. At the time of his death, Mr. Eastland was about 61 years of age and in good health; was a sober, industrious, well-educated, efficient business man of 30 years' experience. During the ten years just preceding his death, according to the testimony of Mrs. Eastland, his personal earnings ranged from $300 to $750 per month, although it appears that for several months prior to death his earnings were negligible, although he had employment. The court judicially knows that, for some time preceding the death of Mr. Eastland, the Nation was in the throes of an unusual economic crisis; business activities were at a standstill, failures were epidemic, and millions were out of employment. In such a crisis, one dependent, as was deceased, upon personal earnings, was fortunate in finding employment of any kind, on any reasonable terms. We therefore overrule all assignments and propositions relating to this phase of the case.

As basis for the collection of exemplary damages, plaintiff alleged, in substance: That at and prior to the accident, defendant, holding itself out to the public as furnishing a very rapid passenger service between Fort Worth and Houston, by way of Dallas, promulgated and maintained a certain schedule, instructed the drivers of its busses to maintain the same, and in order to do so it became necessary for drivers to operate busses in excess of 40 miles per hour. That on the afternoon of the accident, one of defendant's busses left Fort Worth at 5:15 o'clock p. m. upon a schedule calling for its arrival at the town of Irving, between Dallas and Fort Worth, at 6 p. m. o'clock, in Dallas at 6:15, at Corsicana at 7:35, Huntsville at 10:30, and Houston 12:25 a. m. That the respective distances of said cities from Fort Worth are as follows: Irving 21 miles, Dallas 33 miles, Corsicana 88 miles, Huntsville 209 miles, and Houston 279 miles. That the first 20 miles out of Fort Worth was over a winding narrow graveled road, it being impossible to operate thereon at a very rapid rate of speed, rendering it necessary to make up time by running at an excessive rate, 50 miles per hour, from Irving to Dallas. That defendant's schedule required busses to make all station stops, take on and let off passengers, secure fuel, repairs, and adjustments, and complete the run from Forth Worth to Houston—a distance of 279 miles—in a gross time of 7$\frac{1}{16}$ hours. That said schedule required defendant's drivers to run at a high and dangerous rate of speed, of, to wit, more than 50 miles per hour, constituting such gross and wanton negligence as to render defendant liable not only for the actual damages sustained by plaintiff, but for exemplary damages as well. That at the time of the alleged accident, defendant's bus was being operated upon a schedule of speed requiring the driver to run at more than 40 miles per hour, and that just prior to the collision said driver was operating the bus at more than 40 miles per hour, to wit, at 70 miles per hour. That the driver failing to keep a proper lookout as he approached the intersection, or sound his horn, or slow down the speed of the bus, or to apply his brakes, struck the car in which deceased was riding after it had safely passed the intersection and was on the left or north side of the highway, concluding on this issue as follows: "That because said defendant established a schedule of such short time between Fort Worth and Dallas, and required its drivers to attempt to make said schedule regardless of statutes and ordinances as to speed, said defendant was thereby violating the laws of the State of Texas, wilfully and wantonly and with a reckless disregard for life and property, and was so reckless and indifferent to the rights of said A. M. Eastland that it was guilty of negligence with malice; and said defendant was further guilty of negligence with malice because it permitted its driver and compelled said driver to drive at a rate of speed of more than forty miles per hour, to-wit seventy miles per hour, in reckless disregard for the rights of said A. M. Eastland, and said driver did so drive at seventy miles per hour, with such utter and reckless disregard for the rights of said A. M.

Eastland and such action was the action of the defendant, itself, and was authorized, approved and adopted by the defendant, and the defendant is liable therefor; and the action of defendant company in sending said bus on the road without having the brakes thereon duly inspected, adjusted and equalized, was such a reckless disregard of the rights of said A. M. Eastland as to amount to malice; that because of said several acts of negligence and because same were done with a reckless disregard of the rights of said A. M. Eastland, defendant ought to respond herein to plaintiffs in the sum of Fifty Thousand ($50,000) Dollars punitive damages."

Defendant presents a series of propositions (Nos. 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 29) contending that the trial court erred in overruling certain special exceptions urged to that part of plaintiff's petition devoted to the issue of gross negligence, also to the introduction of evidence in support of these allegations; the contention being that no facts were alleged showing gross negligence. These propositions are grouped around the central idea that, as the accident occurred on the highway between Forth Worth and Dallas (about five miles west), all allegations with reference to the promulgation and maintenance of a schedule for the operation of busses between Dallas and Houston, and evidence introduced in support of these allegations, were immaterial and prejudicial because the suit was based upon a collision occurring on the highway between Forth Worth and Dallas.

As before shown, the allegations excepted to and the evidence objected to were in regard to the issue of gross negligence and the right of Mrs. Eastland to recover exemplary damages. On this issue, we think the allegations proper and the evidence admissible. Exemplary damages are not allowed as compensation, but as punishment, or "smart money," for an offense committed, and necessarily involves a blending of the general interest of society with those peculiar to the aggrieved party. 17 C.J. 968, § 268; Southern Cotton Press & Mfg. Co. v. Bradley, 52 Tex. 587, 588, 589; Flannery v. Wood, 32 Tex.Civ.App. 250, 73 S.W. 1072; Holland v. Closs (Tex.Civ.App.) 146 S.W. 671, 674.

According to the testimony of Mr. Bowers, owner and president of defendant company, the distance from Fort Worth to Houston via Dallas is 270 miles. The running time between these points was 7 hours and 10 minutes. More than 20 miles of the distance was within the limits of cities and towns, where the speed could not legally exceed 20 miles per hour, thus consuming one hour of the schedule time, leaving 6 hours 10 minutes to run the remaining 250 miles and make all station stops (there being 16, as shown by defendant's time-table) showing, we think with reasonable certainty, that defendant's busses could not have been operated from Forth Worth to Houston according to schedule without exceeding the speed limit of 40 miles per hour. The bus in question (as per schedule) left Fort Worth at 5:15 p. m., one hour being allowed for the run to Dallas, the distance being 33 miles, 3½ miles of which are in city limits where the speed could not legally exceed 20 miles per hour, thus consuming ten minutes of the hour and leaving 50 minutes to travel the other 29½ miles, make the necessary stops, and change busses at Dallas. Furthermore, it is disclosed that between Fort Worth and Irving, the road is practically unpaved, 12 miles of which, not being kept up by the county, was dragged when necessary at the expense of defendant. We think it a legitimate inference that for more than half the distance between Fort Worth and Dallas an average speed could not have been maintained, thus requiring a greater rate over the paved portion of the highway, 12 to 15 miles, between Irving and Dallas. So, we conclude that the court properly submitted the issue of gross negligence, that the finding thereon of the jury was authorized by evidence, and that the court did not err in rendering judgment in favor of plaintiff for the amount of exemplary damages found by the jury.

Defendant also assigns error because the court refused to submit certain requested issues (see propositions Nos. 34, 35, 36, 37, 38, 39, and 40). These assignments and propositions are overruled, for the reason that, in so far as authorized by pleadings and evidence, the issues requested were substantially submitted in the court's general charge, and were found against the defendant.

Defendant further complains (proposition No. 50) of the action of the court in refusing to withdraw from the consideration of the jury all testimony as to how the accident occurred, except that

of three witnesses—Miss Lou Blumberg, A. K. Kuttler, and Roger E. Miller. The motion was based upon the idea that as the testimony of these witnesses was introduced by plaintiff, and showed, as a matter of law, that deceased was guilty of negligence, the proximate cause of the collision, that she was bound by said testimony, without reference to that of any other witness. Defendant also urges propositions. Nos. 51, 52, 53, 54, and 55, dependent upon the correctness of proposition No. 50.

If the trial court had taken the action requested by defendant, the testimony of Mr. Lloyd, a passenger in the bus at the time, and that of Mr. Easley, driver of the bus, would have been withdrawn from the consideration of the jury, and thereby plaintiff would have been deprived of the right to have the jury pass upon the credibility of these witnesses and the weight to be given their testimony. Besides, the motion is based upon an incorrect assumption. It proceeds on the idea that a party, by introducing the testimony of a witness, not only vouches for his credibility, but is bound absolutely by the testimony of the witness, however inaccurate or untrue in fact. This is not the law. The words "impeach" and "contradict" are used interchangeably in some of the cases, but it is obvious, we think, that they are not synonymous terms. As a general rule, a litigant vouches for the credibility of a witness introduced by him, and is forbidden to impeach the witness as being unworthy of belief; but notwithstanding this rule, the litigant is permitted to contradict the testimony of such a witness, by independent facts showing its inaccuracy or falsity. See Sparks v. Johnson (Tex.Civ.App.) 235 S.W. 975, 976; Western Union Tel. v. Vickery (Tex.Civ.App.) 158 S.W. 792, 794; 70 C.J. 1156, 1158, § 1341b.

■ Furthermore, in urging this motion, defendant ignores the fact that the jury could have found from the testimony of Miss Blumberg and Messrs. Kuttler and Rogers sufficient evidence to sustain the findings on the issue of discovered peril. Miss Blumberg testified, in effect, that in approaching the intersection, the bus was traveling at a normal rate of speed, that the Eastland car was in clear view, that the driver of the bus neither checked its speed nor sounded the signal horn until within about a bus' length from the intersection, that he then blew the horn, put on brakes at the same time, and the collision occurred, the bus striking the car as it had just passed or was passing the intersection. Kuttler, also a passenger, testified in regard to the open and unobstructed view at the intersection, saw the Eastland car approaching, that it and the bus at the time were about the same distance from the intersection, the bus traveling 50 miles per hour; that neither vehicle showed any disposition to slow down, but kept going, and the accident occurred; that the driver of the bus could have avoided the collision by turning to the right very little—say five feet—there being space enough for him (the bus) to run on. This testimony, we think, furnished ample support for the finding of the jury on the issue of discovered peril; hence even if, as contended by defendant, contributory negligence on the part of deceased was shown, nevertheless the finding on the issue of discovered peril of itself established defendant's liability.

■ In its origin, the doctrine of discovered peril was a necessary qualification of the general rule that the contributory negligence of the injured person barred recovery; the doctrine being that a person being discovered in a perilous position as the result of his own negligence, a sound humanitarian public policy requires the discharge of a new duty, by the party making the discovery—that is, the duty to protect the exposed person.

After a careful consideration, we overrule all assignments and propositions challenging the correctness of the verdict and judgment in favor of Mrs. Eastland, but sustain those challenging the correctness of the judgment in favor of Mr. and Mrs. Murphy; hence, the judgment in favor of the latter is reversed and judgment here rendered that they take nothing by reason of their suit against defendant, and that the judgment in favor of Mrs. Eastland be in all things affirmed.

Reversed and rendered in part, and affirmed in part.

## On Rehearing

Appellant moves for a rehearing on the ground (paragraph 3 of the motion), among others, "Because the court erroneously stated in its opinion that the jury found that the deceased, A. M. Eastland, did not fail to sound his horn as he approached the intersection in question."

We are guilty of committing the inaccuracy thus called to our attention. Stating the findings of the jury, we said they found " * * * that he (Mr. Eastland) did not fail to sound his horn as he approached the intersection, * * *" whereas we should have said they found "that, in failing to sound his horn as he approached the intersection, he was not guilty of negligence."

We will correct the opinion to conform to the facts, not because the inaccurate statement is either material or harmful, but for the sake of accuracy.

Having duly considered all grounds urged by appellant for a rehearing, and failing to find the existence of any reason for changing our decision, the motion is overruled.

Overruled.