Richard W. JENKINS, Appellant,

v.

V. U. HENNIGAN et al., Appellees.

No. 6084.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 31, 1957.

Rehearing Denied Feb. 20, 1957.

Leachman, Gardere, Akin & Porter, Dallas, McDaniel & Hunt, Center, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellees.

ANDERSON, Justice.

The suit is the aftermath of a collision between an automobile that was being driven by appellant and one that was being driven by one Allen Williams. By virtue of the collision, Lydia H. Hennigan, who was a passenger in the automobile Williams was driving, sustained personal injuries from which she died a few hours later. Her heirs, she having died intestate and there being no necessity for an administration of her estate, sued to recover for the pain and suffering she is alleged to have experienced before death and to recover money expended or owing for medical care and hospitalization rendered her because of her injuries and for her burial. Trial to a jury resulted in a verdict on which judgment was rendered in favor of the plaintiffs and against the defendant for $10,000. The defendant duly perfected his appeal to this court.

The collision occurred in Shelby County, about 5:30 p. m., on October 9, 1955. Weather conditions and visibility were good at the time and the pavement was dry. The automobiles approached the scene of the collision from opposite directions along the same highway, state highway No. 7. Williams was driving southward; the defendant, northward. Williams was ascending, the defendant descending, the north slope of a hill. The collision occurred within three hundred feet or less of the hill's crest. Williams turned to his left for the purpose of entering a driveway that led to a store east of the highway and, when struck, his car was in the highway's east traffic lane. He commenced his turn before coming abreast of the driveway and was driving more or less southeastward at the moment of impact. His car, a sedan, was struck about midway of its right side by the front end of defendant's vehicle, the rear door having apparently taken the brunt of the blow. Because of the angle at which

Williams was driving, and of the fact that just before the moment of impact the defendant veered his own car slightly to his left, or westward, the part of the front end of defendant's car that principally came in contact with the other was that part to the right of the front's center. Defendant's car was still entirely within the east traffic lane of the highway at the moment of impact.

In response to special issues, the jury found that the defendant: (1) failed to keep a proper lookout; (2) failed to maintain proper control of his vehicle; (3) was driving his vehicle at a speed in excess of that at which a person of ordinary prudence would have driven it in the same or similar circumstances; (4) failed to steer his automobile to the left. They also found that defendant's conduct in each of the first three respects was a proximate cause of the collision; that his conduct in the fourth respect was both negligence and a proximate cause of the collision; and that the collision was not the result of an unavoidable accident. The jury failed to find from a preponderance of the evidence that Allen Williams, driver of the automobile in which the deceased was riding: (1) failed to keep a proper lookout; (2) turned his vehicle to enter the driveway to the store at a time when such movement could be made with safety; (3) failed to give an arm signal continuously during not less than the last 100 feet traveled by his vehicle before turning of his intention to turn left; (4) drove his automobile on his left-hand side of the highway, considering the direction in which he was going, at a time when the section of highway being traveled by him was in a no-passing zone; (5) failed to have his automobile under proper control. They likewise failed to find from a preponderance of the evidence that at the time of the collision the defendant was acting under an emergency. The special issues by which the last-mentioned six matters were submitted were all answered in the negative.

■ By his first point of error appellant asserts that the trial court erred in permitting plaintiffs to impeach their own witness, Harold C. Price, "by reading to him and allowing him to read" a written statement he had previously signed. The point is overruled. The witness was properly permitted to read the statement for the purpose of refreshing his memory, he having previously testified during the trial that he did not recall whether or not Mrs. Hennigan was conscious during all of the time he was in her presence after the accident. Latham v. Jordan, Tex.Com.App., 17 S.W. 2d 805; Sparks v. Johnson, Tex.Civ.App., 235 S.W. 975; 44 Tex.Jur. 1130, Sec. 140. The written statement was not itself introduced in evidence, and no part of it was read to the jury or to the witness in the presence of the jury. Counsel for plaintiff did in one instance ask the following question: "You did make this statement at one time that you felt she was conscious?" Objection was sustained, however, before the witness answered, and the jury was instructed by the court to disregard the question. In another instance the following transpired between counsel and the witness, without objection by the defendant: "Q. To refresh your memory now and see if you said she was conscious all this time and seemed in pain and appeared to be suffering—? A. Well, I don't recall whether she was conscious all the time or not." These were the only approaches by counsel to divulging to the jury the contents of the written statement. Obviously, they did not amount to impeachment of the witness. We have had recourse to the statement of facts in connection with the matters under discussion and conclude that no error is presented.

■ While on direct examination by counsel for appellant, N. W. Clark, a state highway patrolman who investigated the collision shortly after it happened, was asked if he could tell from what he found on the ground what position the defendant's car was in at the moment of impact.

Having replied in the affirmative, he was asked to give the car's position, and stated:

"It was in the right-hand side of the road in the lane of traffic going north, at about a 45-degree angle." Objection by counsel for plaintiffs to the effect that the answer constituted a conclusion of the witness was sustained "as to the latter part of the answer," and the jury was instructed to disregard that part. This ruling is complained of in appellant's second point of error. The point is overruled. In Union Bus Lines v. Moulder, Tex.Civ.App., 180 S.W.2d 509, 511, it is said to be "a well-recognized principle that expert opinion testimony is not competent unless it relates to a matter concerning which the expert is shown to have knowledge superior to that possessed by the ordinary juror"; and Koonce v. Perales, Tex.Civ.App., 268 S.W.2d 683 and Texas Law of Evidence (McCormick & Ray) 1st Ed., Sec. 625 are to the same effect. Even conceding, therefore, that Clark had qualified as an expert on wrecks, it was not error to exclude his testimony relative to the angle at which defendant's car was turned at the moment of impact. There was no evidence before the court to indicate that the testimony was based upon anything other than the skid marks made on the pavement by defendant's tires, and, given the direction of these marks, the jury was surely as well qualified as the witness to judge the position of the vehicle. The witness had earlier been permitted to testify that the marks angled toward the center of the highway, and would no doubt have been permitted to give the exact angle of turn if the matter had been pursued, but it was not. Pictures of the skid marks were before the jury, and we are unable to see wherein the testimony of the witness could have added anything to what they disclosed, because the angle of the car could not have been otherwise then the angle of the skid marks. Furthermore, the excluded testimony could have had no bearing upon any issue that was submitted to the jury except the one with reference to whether the de-

fendant turned to his left in order to avoid the collision, and not even the defendant himself claimed that he undertook to turn when there was still a possibility that the collision could have been thereby averted. In any event, therefore, appellant suffered no harm from the exclusion of the testimony.

In passing, we suggest that the foregoing holding should not be construed as an implied holding that reversible error would have been presented from the plaintiffs' viewpoint if the testimony had been permitted to stand. That question is not before us.

■ In the opening argument to the jury, plaintiffs' attorney, Mr. Fulmer, made the following comments: "I thought maybe he [the defendant] would change it when he got back up here. And he told Wardlow the same thing and then he gave his devotional to him. He didn't want to kill anybody; well certainly we know he didn't want to kill anybody; we are not charging him with wanting to kill anybody, but she's just as dead, isn't she? Just as if a drunk driver ran over her and killed her, she's still just as dead." Objection to the effect that there was no evidence to show that the defendant was intoxicated at the time of the collision and that the argument was outside the record and also inflammatory having been made, the trial court instructed the jury as follows: "Gentlemen of the jury, you heard the testimony and you will be governed entirely by what the testimony shows and what the witnesses testified to. And any statement beyond that by Mr. Fulmer is withdrawn from your consideration and you will not consider it for any purpose. And the court will instruct Mr. Fulmer to stay within the record. Go ahead!" Appellant asserts in his fourth point not only that the court erred in failing to sustain the objection outright but that the instructions given the jury were themselves prejudicial in the circumstances. The point is overruled. We think the argument was not an imputation by counsel that the defendant was intoxicated at the time in question but a recognition and acknowledgment of the contrary. The argument obviously was directed at testimony given by the defendant while being cross-examined by the Hon. Wardlow Lane: "Q. Of course, you can see now where if you had turned to the left or turned to the right, or either way * * * A. [Interposed before question was completed] Mr. Lane, I think I did exactly the right thing; the only thing I could do in my best judgment at that time. If I could have avoided that accident, I assure you, sir, I would have. I have no desire to take the life of any living human being, and I am dedicated to the task of serving and I will continue to do so as long as I possibly can." It, the argument, was not inappropriate in the circumstances. Its primary purpose was clearly that of emphazing that intent was not an issue in the case. If counsel also sought by it to impress upon the jury that they should not be swayed by the fact that the defendant was, as the evidence disclosed, a minister of the gospel, or by defendant's unquestioned good will toward his fellowman, he was within his rights in so doing.

■ The following portion of the opening argument to the jury is complained of in point four: "When they started here they were saying she wasn't entitled to much because she was an old person. Well, I'll tell you gentlemen—:" Having been interrupted at this point by an objection to the effect that the argument was without support in the record, Mr. Fulmer immediately told the jury that he was withdrawing his remark, and, in addition, the court instructed the jury to disregard the argument. Assuming the argument to have been improper, we feel that the curative steps taken were sufficient to render it harmless. The point is accordingly overruled.

■ Still another part of the opening argument is complained of in point five: "Yet, I think he [the defendant] tells you he left San Augustine at 5:00. This happened at 5:30 or 5:35. And I say when a

person averages 60 they have to drive 70 or 75 to average it. I think all drivers know that too." Objection was made that the latter remarks were without support in the record and amounted to unsworn testimony by counsel. The court thereupon instructed the jury to disregard the argument. Even though it be accepted that the remarks were not justified upon the theory that they pertained to a matter of common knowledge, we think no reversible error is presented. There was no evidence to show that the defendant had averaged sixty miles per hour since leaving San Augustine, and so the argument was wholly irrelevant. This being so, we are unable to see how it could well have influenced the jury to appellant's prejudice. Furthermore, no issue pertaining to the specific rate of speed at which the defendant was driving was submitted to the jury. Only the question of whether he was driving at a speed in excess of that at which a person of ordinary prudence would have driven in the same or similar circumstances was submitted, and there was ample evidence to support the jury's answer to the issue. All things considered, therefore, including the fact that the court instructed the jury to disregard the argument, we are of the opinion that appellant has failed to demonstrate that the argument probably caused him injury. Point five is accordingly overruled.

▇▇▇ Argument by Mr. Lane to the general effect that people of great age place a higher evaluation on life than do youths and that the fact that the deceased was old should not operate to diminish the damages to be assessed for her mental anguish was not improper. Mrs. Hennigan was 82 or 83 years old when she received her injuries and the evidence justified the conclusion that until virtually the time of her death she was aware that the injuries would prove to be fatal. Consciousness of approaching death is a proper element to be considered in evaluating mental suffering. The argument was philosophical in nature and was not calculated to have impressed

the jury otherwise. Point six, in which the argument is complained of, is therefore overruled.

▇▇▇ Points seven through eleven pertain to related matters. Point seven complains of the refusal of·the trial court to permit defendant to file a trial amendment alleging negligence on the part of Williams in driving at a rate of speed of from only four to six miles per hour as he crossed the east traffic lane of the highway. Points eight through eleven complain of the court's refusal to submit to the jury issues inquiring as to whether Williams did drive at such rate of speed, as to whether, if he did, he was negligent in so doing, and as to whether such negligence, if any, was a proximate cause and the sole proximate cause of the collision. The trial court committed no error in refusing to submit the requested issues, since there were no pleadings to support submission of them; and points eight through eleven are overruled. Rules 67, 94, 277, 279, Texas Rules of Civil Procedure; Traveler's Ins. Co. of Hartford, Conn. v. Hobbs, Tex.Civ.App., 222 S.W.2d 168. The refusal to permit filing of the trial amendment presents error only in the event the court abused its discretion in this respect, and we are not prepared to say that any such abuse is shown. Appellant argues that the issues were tried by implied consent of the parties, but we cannot agree that this is so. Except for the testimony of Williams himself, there was no evidence to show the rate of speed at which he was driving at the time in question, and his testimony in this respect was elicited while he was being cross-examined by defense counsel. Plaintiffs made no objection to his testimony, it is true, but no valid objection they could have made has been suggested and none occurs to us. When defendant requested leave to file the trial amendment and that the issues under consideration be submitted to the jury, plaintiffs promptly objected, and this was the first occasion they had had to declare themselves. We find nothing in their con-

duct, therefore, from which to imply their consent to a trial of the issues. See Salley v. Black, Sivalls & Bryson, Tex.Civ.App., 225 S.W.2d 426; Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W. 2d 919; Cadwell v. Dabney, Tex.Civ.App., 208 S.W.2d 127. The motion shows on its face to have been filed and presented after the evidence had been finally closed, and no reason for defendant's failure to file it earlier is disclosed by the record. Furthermore, for all that the record discloses, plaintiffs may have demonstrated to the satisfaction of the trial court that allowance of the amendment would prejudice them in maintaining their action. We are convinced, therefore, that point seven presents no error and it is overruled. See Shepard v. Outley, Tex.Civ.App., 256 S.W. 2d 652; Ragsdale v. Lindsey, Tex.Civ.App., 254 S.W.2d 843, 848; Rule 66, T.R.C.P.

The trial court defined "proper control" as being "such control as would have been maintained by a person of ordinary prudence under the same or similar circumstances." Special issue three then inquired whether the defendant failed to maintain proper control of his vehicle, and issue four inquired whether such failure, if any, was a proximate cause of the collision. Objection was made to the definition and issues on the ground that the term "proper control" is ambiguous, multifarious, and incapable of being accurately or correctly defined, in that, it includes and consists of numerous separate and distinct acts and omissions, and as employed in the special issue amounts to a general submission of the issue of negligence without restriction to any particular act or omission on the part of the defendant. The court's action in overruling the objection and in submitting the definition and issues is complained of in point twelve. The point is overruled. Even though it should be conceded that the objection was well founded and that special issues three and four were not ultimate issues that would support the judgment, no reversible error is presented, unless the mere giving of the definition and the sub-

mission of the issues worked prejudice to appellant; because the judgment is supported by other jury findings which are themselves supported by ample evidence. Apparently in recognition of this fact, appellant now argues that the mere submission of the definition and issues did work to his prejudice. He contends that a duplication of issues resulted, since, as he would have it, special issue three was a composite submission of the questions of whether the defendant failed to keep a proper lookout, failed to turn to his left, and was driving at an excessive or negligent rate of speed, and these matters were also separately and specifically inquired about in other issues. Even so, reversible error is not presented. For one thing, the charge was not objected to on the ground that the same issues were being submitted twice, nor upon the ground that it was giving undue emphasis to plaintiffs' theory of the case, and these matters are not properly before us for review. For another, appellant has failed to demonstrate that he probably suffered harm. We cannot agree with his contention that the definition and issues in question emphasized plaintiffs' theory of the case to an extent that the jury was probably given the impression that the trial court was of the opinion that the defendant had been guilty of the acts and omissions inquired about. Nor do we think that in this instance the definition and issues probably affected the jury's answers to the other issues that were submitted in the charge.

Special issue No. 18 inquired whether Allen Williams turned his automobile to the left to enter the driveway to the store at a time when such movement could not be made with safety. No. 19, which was to be answered only in the event No. 18 had been answered in the affirmative, inquired whether such act, if it occurred, was negligence. And No. 21, which was to be answered only in the event No. 19, the negligence issue, had been answered in the affirmative, inquired whether such act, if it occurred, proximately contributed to causation of the collision. Special issue

No. 28 inquired whether Williams drove his automobile on his left-hand side of the highway, considering the direction in which he was going, at a time when the section of highway being traveled by him was within a no-passing zone. And No. 29, which was to be answered only in the event No. 28 had been answered in the affirmative, inquired whether such act, if it occurred, was negligence. Objection was made to issue No. 19 and to issue No. 29 on the ground that if Williams had been guilty of the conduct inquired about in the primary issue to which the negligence issues respectively related he had been guilty of negligence as a matter of law and that therefore said issues Nos. 19 and 29 were on the weight of the evidence, in that they were calculated to lead the jury to believe that they, the jury, were at liberty to determine, as a matter of fact, whether such conduct amounted to negligence. The defendant also objected to the portion of the charge by which the jury was required to answer special issue No. 21, the proximate-cause issue, only in the event of an affirmative answer to issue No. 19, the negligence issue. He represented that in the event of an affirmative answer to special issue No. 18 he was entitled, regardless of the answer to the negligence issue (No. 19), to have the proximate-cause issue (No. 21) answered. The primary issues (18 and 28) were both answered in the negative, or favorably to the plaintiffs, and we think this rendered of no consequence the matters that are complained of. We therefore overrule appellant's points thirteen through fifteen. We are unable to see how the mere submission of the negligence issues (19 and 29) could have worked prejudice to appellant.

■ The evidence and the charge to the jury considered, approximately $9,000 of the $10,000 awarded as damages must have been awarded for pain and suffering experienced by the deceased. Appellant contends that the amount is excessive and without support in the evidence. We find nothing in the record, however, which we feel would justify us in substituting our judgment for

that of the jury. There was evidence from which the jury was at liberty to conclude that Mrs. Hennigan lived approximately three hours after being injured; that during virtually the whole of that time she was conscious; that her injuries were of a nature to cause excruciating pain; and that she believed from the beginning that she was going to die. These things considered, we are not prepared to say that the damages that were awarded are in an amount that calls for revision of the judgment. Points sixteen and seventeen are accordingly overruled.

■ The jury answered special issue No. 15 in the negative. In other words, they failed to find from a preponderance of the evidence that immediately before the collision Allen Williams failed to keep a proper lookout for approaching vehicles. Appellant asserts that there was no evidence, or, in the alternative, that there was insufficient evidence, to support the answer. He himself had the burden of proof on the issue, and so his contention is groundless unless we construe it as being that as a matter of law the evidence required an affirmative answer to the issue. And if the evidence did as a matter of law require such an answer the issue should not have been submitted. However, the evidence did not conclusively establish that Williams failed to keep a proper lookout. The fact that Williams did not see the defendant's automobile prior to the collision is but one of the circumstances to be considered. The jury was at liberty under the evidence to conclude that the defendant approached the scene of the collision at a very high rate of speed and that the hill over which he approached obscured his automobile from Williams until just momentarily before the collision occurred. Williams testified that he looked both ahead and behind as he prepared to turn and that he saw no vehicle in either direction. The evidence does not conclusively establish that defendant's automobile must have been then already in view. After he began turning, Williams had not only the highway to his right and left to be

concerned with but also the driveway he was about to enter. The extent to which he should have directed his attention to the direction from which defendant approached was, in the circumstances, a matter for the jury's determination. Points eighteen and nineteen are overruled.

■■ The jury failed to find from a preponderance of the evidence that the point at which Williams turned was in a no-passing zone. They answered the issue (No. 28) in the negative, and the answer is now attacked as being contrary to the undisputed evidence. We think the evidence conclusively established that Williams was in a no-passing zone when he turned, and the issue should therefore not have been submitted. But the evidence did not conclusively establish that the act of turning while in the no-passing zone was a proximate cause of the collision and there is no jury finding that it was. Proximate-cause issues were submitted in connection with the primary issue, but the one pertaining to sole proximate cause was to be answered only in the event of an affirmative answer to the primary issue (No. 28) and the other, which asked if the act proximately contributed to causation of the collision, was to be answered only in the event of an affirmative answer to the negligence issue that was also submitted, special issue No. 29. The defendant made no objection to the conditional manner in which the proximate-cause issues were submitted, nor did he make any to the submission of the primary issue (No. 28). Having thus. acquiesced in the manner of submission, and since the condition on which the issues were to be answered did not come to pass, he must be held to have waived his right to jury findings on the proximate-cause issues, and those issues must be taken as having been answered by the court in such manner as to support the judgment. Rule 279, T.R.C.P.; Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Knight v. Stewart, Tex.Civ.App., 287 S.W.2d 748. In the absence of a finding that the act inquired about in special issue No. 28 was a proximate cause of the collision, the act itself cannot affect the judgment, and so the manner in which special issue No. 28 was answered becomes immaterial. Points 21 and 22 are therefore overruled.

No reversible error having been presented, the judgment of the trial court is affirmed.