**GULF, COLORADO & SANTA FE RAILWAY CO., Appellant,**

v.

**James H. SIMPSON, Appellee.**

No. 6265.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 21, 1960.

Rehearing Denied Feb. 17, 1960.

Chilton O'Brien, Beaumont, for appellant.

Joe H. Tonahill, Jasper, for appellee.

HIGHTOWER, Justice.

James H. Simpson brought this action in the district court of Jasper County against the Gulf, Colorado & Santa Fe Railway Company as a result of personal injuries sustained when struck by the company's train as he emerged from under the floor of a planer mill shed while working as a millwright for Ealand-Wood Lumber Company in Jasper County, Texas, on June 25, 1956. A jury verdict resulted in a judgment against the railway company which, as appellant here, urges only two points of error, their substance being: (1) The court erred in refusing the company's motion for instructed verdict at the close of all the evidence for the reason that Simpson's own testimony established his contributory negligence as a matter of law in failing to look before and/or after coming from under the planer mill shed. (2) The error of the court in refusing the company's motion for new trial, the jury's findings under special issues 21 and 24, and derivative issues thereof, to the effect that Simpson did so look and did keep a proper lookout after emerging from beneath the shed, being without support in the evidence and contrary to the overwhelming weight and preponderance of the evidence and Simpson's own admissions. The findings of the jury to the effect that the negligent failure of the appellant to keep a proper lookout or proper control, or to warn of the approach of its train by bell, whistle, flagman or otherwise proximately caused the appellee's injuries are not attacked.

The appellant's tracks run north and south along the eastern side of the planer mill shed, the western, or inside track, being approximately 7 feet from the extreme eastern side of said shed. Due to the

overhang of the appellant's diesel engines when upon the tracks this 7 foot space is narrowed to approximately 4 feet. On the afternoon of the accident the appellee alighted from some steps on this side of the shed and proceeded south down such 7 foot pathway for about 30 feet where he crawled under the shed to repair the hammerhog which had become choked up. The job completed, he attempted to emerge where he had entered when he was struck a severe blow in the vicinity of his neck and head and dragged many feet by one of the appellant's diesel units then proceeding south along its tracks aforesaid.

Primarily, together with the physical facts, the appellant contends that the following testimony of the appellee establishes the correctness of its points of error:

"Q. All right. Now, describe just how you started out and what happened— from leaving the hog under the planer mill * * * how you came out and what happened? A. I turned back from where I was at, and I came out, and I raised up —I turned to myself as I crawled out; I was turning myself back toward the steps south, the way I came from there, and as I raised up something hit me behind the head."

He stated that he did not know what had hit him at the time but subsequently learned that he had been struck by one of appellant's diesel engines.

"Q. Had you had an opportunity to look either way before you were struck? A. No, I didn't. I hadn't straightened up good, —I don't believe I was straightened up, to tell you the truth about it, when I got hit.

"Q. Were you in the process of looking either way as you got hit—were you getting ready to look either way just as you got hit? A. Yes, sir, I was.

"Q. Did you have time to straighten up and look either way before you were hit? A. No, sir."

On cross-examination he testified: "Now, if you have just testified that after you were under the planer mill and when you came back out you didn't look in any direction on the track to see if there was a train or anything on it or approaching on it; is that a correct statement? A. No, sir, it isn't correct.

"Q. Well, what is incorrect about it, Mr. Simpson? A. Because I didn't have time to look.

"Q. Well, I did not ask you why you didn't look. I asked you whether you did or did not look. Now, it is a correct statement, isn't it, that you didn't look? A. It—I hadn't got up to where I could look. That is what I am trying to tell you.

"Q. Well, I understand that. You say — A. Naturally, I didn't look, because I was not up to where I could see.

"Q. So, then, my statement that you did not look is a correct statement, is it not? A. That's right.

"Q. Now, Mr. Simpson, as you got to the edge of the planer mill and just before you came on out onto the area between the edge of the planer mill and the track, there was nothing to keep you from looking out there and seeing the wheels and so forth of that train, was there? A. I had my head down like this; my head was down that way; my face was toward the ground, probably looking that much ahead as you crawl out.

"Q. Well, had you looked up and out you could have seen the train? A. After I got my body clear, where I knowed I could raise up, that's when I got my head up.

"Q. Well, I mean you could have raised your head up while you were still underneath the planer mill and seen out on the track, couldn't you? A. Well, I won't say that. You got—you got to be sure you don't bump yourself on something else overhead of you.

"Q. Well, you could carefully raise your head up? A. You could lay down on the ground and look out.

"Q. Yeah. A. But I didn't lay down on the ground and look out.

"Q. Without laying down, though, you could look out from your all fours, couldn't you? A. I said I could see just a small piece ahead of me.

"Q. Well, what was there to prevent you from looking up and down the track before you came out from under the planer mill shed floor? A. There was a pile of dust there, and then the blocks running up and down the side of the planer mill that you couldn't see very far on account of that.

"Q. Are you telling us that there were some obstructions there that day that aren't shown in these pictures? A. Well they— on the outside; that's on the outside. You can see structures back underneath the planer mill, and back there—the one up there—where they join back here, you couldn't see too far.

"Q. Well, when you got—about how high is that planer mill floor off the ground? * * *

"Q. Would you say that is about three feet, maybe a little more? A. I would say somewhere around about thirty inches, if I was going to guess off for inches.

"Q. Well, in that thirty inch space, if you were able to get in it, you could have raised your head up just as you got to the edge there, before stepping out onto the area alongside the track, and looked to see whether or not a train was there or approaching, couldn't you? A. Well, if—I went under there and I didn't see no train, and I did look.

"Q. That is when you went under? A. And I didn't see no train up there, and not knowing that it was a switching at all I went under there, and I come out in the same form, as I had it in my mind there wasn't nothing in the way.

"Q. Well, were you backing out? Is that why you couldn't look? A. No, sir, I come out head first.

"Q. Come out head first? A. That's right.

"Q. Now, just as soon as you raised up, according to your testimony, you were struck; is that right? A. That's right."

The appellant contends the facts of this case are clearly within the holding of Galveston H. & S. A. Ry. Co. v. Price, Tex. Com.App., 1922, 240 S.W. 524 and cases there cited, and other cases holding similarly to the effect that where one who in the possession of his faculties, steps immediately in front of a moving train, the approach of which is unobstructed from his view, and which could be seen by him by the use of his ordinary faculties or by taking any precautions whatsoever, he is guilty of contributory negligence as a matter of law when injured. We have no hesitation in overruling this contention for the reason that it is obvious that the facts of this case are but slightly analogous to the usual railway crossing accidents where a person has actually attempted to proceed upon or over railway tracks. Rather, we have here a situation not differing greatly from one in which an employee, by reason of miscalculation or engrossment in his work, turns from the performance of his duties on one instrumentality immediately into the machinery of another instrumentality connected with his employment and is injured notwithstanding his knowledge of the danger of his acts.

 We do agree with the appellant that the foregoing testimony conclusively established that the appellee failed to look for an approaching train before coming out from under the planer mill floor. That issue (21) should not therefore have been submitted. But we think the question of whether he was negligent in failing to look and whether such negligence was a proximate cause of his injuries was a question of fact. He knew the space between the shed and the track nearest thereto was a

dangerous place to occupy with a train approaching. He had knowledge that the tracks were used at frequent intervals of the day by the appellant's engines. Yet he also knew that as long as he remained beneath the shed there was no danger or need to look for trains along the appellant's track. Before going beneath the shed he had observed the appellant's tracks to the north and south of his point of entry and had determined that the same were not being used by moving trains. He had been under the shed only about ten minutes before he began crawling out in an ordinary manner in the belief that no trains were then moving upon the tracks. Such were some of the circumstances raising a question of fact as to whether a man of ordinary prudence would have looked before placing himself in the space between the side of the shed and the track nearest thereto. Thus the motion for instructed verdict was correctly denied by the trial court. Had such failure to look been found to be negligence under a proper submission of the question to the jury, then the appellant would ordinarily have been entitled to a finding of whether or not such negligence was a proximate cause of the injuries received. However, due to the manner in which the issues were submitted by the court the case may not be remanded for a determination of these facts by a jury. Special Issue No. 21, inquiring whether Simpson failed to look for an approaching train before coming out from beneath the shed, was answered in the negative. The next issue (No. 22) inquired as to whether the failure to look was negligence and called for an answer only in the event the primary issue was answered in the affirmative, and was therefore unanswered. Special Issue No. 23 was also unanswered as it presented the proximate cause element with the instruction that it was to be answered only in the event the jury had found negligence under the preceding issue. This court, speaking through Judge Anderson, has heretofore held that a defendant must be held to have waived his right to jury findings under issues submitted similarly as these which the

jury here failed to answer in the following language:

"The defendant made no objection to the conditional manner in which the proximate-cause issues were submitted, nor did he make any to the submission of the primary issue (No. 28). Having thus acquiesced in the manner of submission, and since the condition on which the issues were to be answered did not come to pass, he must be held to have waived his right to jury findings on the proximate-cause issues, and those issues must be taken as having been answered by the court in such manner as to support the judgment. Rule 279, T.R.C.P.; Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Knight v. Stewart, Tex.Civ.App., 287 S.W.2d 748. In the absence of a finding that the act inquired about in special issue No. 28 was a proximate cause of the collision, the act itself cannot affect the judgment, and so the manner in which special issue No. 28 was answered becomes immaterial." Jenkins v. Hennigan, Tex.Civ.App., 298 S.W.2d 905, at page 914.

Neither are we of the opinion that other elements of the appellant's points of error should be sustained. The accident occurred in the afternoon of a hot, dry and dusty day. From all indications in the record the appellee emerged from beneath the shed bent on retracing his steps south along the pathway whence he had come. He was returning to his duties inside the planer mill shed with no intention of walking upon or across the tracks in question. Although potentially dangerous, the 4 foot space between the appellant's engines and the shed afforded sufficient room in which to walk. He testified that he could have heard the engine's warning whistle and bells had they been used in its approach to the shed. He stated that he was in the process of starting to look for trains at the time he was struck, thereby creating the inference that he had miscalculated the distance he had crawled

from the shed. Before we are justified in holding as a matter of law that the appellee failed to keep a proper lookout, his conduct in that respect must have been so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no person of ordinary prudence would have acted similarly under like circumstances. Texas & N. O. R. Co. v. Day, Tex., 316 S.W.2d 402 and cases cited. Being unable to so conclude we necessarily hold that reasonable minds could have properly determined, as the jury did, that the appellee, engrossed in the performance of his duties, did not fail to keep such lookout for the appellant's engines or trains after emerging from beneath the shed as would have been kept by a person of ordinary prudence under the same or similar circumstances. The judgment of the trial court is accordingly affirmed.