**TEXAS BUS LINES et al. v.
WHATLEY et al.**

No. 11955.

Court of Civil Appeals of Texas. Galveston.
April 8, 1948.
Rehearing Denied April 29, 1948.

Vinson, Elkins, Weems & Francis, C. M. Hightower and W. B. Browder, Jr., all of Houston, for appellant Texas Bus Lines.

Fulbright, Crooker, Freeman & Bates, M. S. McCorquodale and Sam H. Hood, all of Houston, for appellant Robert M. Ellison.

Helm & Jones and Albert P. Jones, both of Houston, for appellees.

CODY, Justice.

This was a personal injury suit by Mrs. Gertrude Whatley and husband, Willis C. Whatley, against the Texas Bus Lines and Robert M. Ellison to recover for injuries sustained by Mrs. Whatley while a passenger in a bus of the Bus Lines, when it collided with an automobile driven by Ellison. And in the suit the Bus Lines and Ellison brought cross-actions against each other.

The issues made by the pleadings of the parties on which the court considered there

was evidence to require submission totalled seventy-one. The issues so submitted to the jury, insofar as they are material on appeal, will be hereafter discussed. On the answers thereto, the court rendered a joint and several judgment against the defendants for $20,000.00 and each defendant was denied indemnity against the other, but the judgment awarded each contribution from the other. Prior to the submission of the issues to the jury, the Bus Lines moved for directed verdicts as against plaintiffs, and Ellison; and, after the verdict came in, the Bus Lines moved for judgment notwithstanding the verdict.

The version of the facts, stated in the light most favorable to the jury's findings, is this:

The Bus Lines operates buses over the Houston-Galveston' highway, and at the time in question also operated busses between Houston and Ellington Field, which is on aforesaid highway, between Houston and Galveston. The bus here involved left the bus station in Houston at 7:00 A. M., October 5, 1945, and duly arrived at Ellington Field, and there picked up three passengers for the return trip to Houston, one of whom was the plaintiff, Mrs. Whatley, another being a young lady, and the third being a Lt. Smith. The driver of the bus departed for Houston on schedule which was 8:10 A. M. The highway in question runs north and south, and consists of a cement slab or pavement approximately 20 feet wide, on which there are two traffic lanes, one north and one southbound. The shoulders slope gradually from the pavement to the ditches on both sides of the road, and were covered with grass. It had rained the night before, but no water was standing in the ditches. The collision here in question occurred about a mile from where the bus left Ellington Field, in the northbound traffic lane, which was the proper lane for the bus to be in. Shortly before the collision, the Ellison automobile, which was southbound, had been moving in the southbound traffic lane. The Ellison automobile was a 1940 Chrysler, and was between 5½ feet and 6 feet wide, and 5½ feet high.

The bus was 30 feet long and 8 feet wide, and the bus driver's seat was pretty high, so that his head was above the automobiles which approached him. The traffic in the southbound traffic lane was heavy, the automobiles therein moving practically bumper to bumper, and at the rate of from 15 to 20 miles an hour. The northbound traffic—away from Ellington Field—was light. At a distance of something over 400 feet from the point of the collision, a southbound automobile, which was ahead of Ellison in the southbound traffic lane, moved over into the north-bound traffic lane, and Ellison followed behind it at a distance of 25 to 30 feet for some 200 feet. When the car which Ellison was so following in the northbound traffic lane, cut back into the southbound traffic lane, taking the only open space in the southbound traffic lane, Ellison then saw the bus for the first time, about 200 feet from him. He sounded his horn, and swerved to his right twice, trying to get back into the southbound traffic lane. Ellison testified that, when he saw the bus driver would not give way to the right (i. e., the east shoulder), he cut sharply to the left just before the collision. He further testified that the bus did not slow down until just before the collision; that had the bus driver put its east side wheels on the shoulder and kept its west side wheels on the pavement, he could have gotten through. He also testified that he was traveling at the rate of 45 miles an hour, and that about four seconds elapsed between the time he first saw the bus and collision. Two Army officers were riding with Capt. Ellison.

Lt. Smith, one of the three passengers on the bus, testified by deposition which was taken by the Bus Lines, but introduced by plaintiffs. There seem to be no pronounced conflicts between his testimony and that of Ellison, and some of the matter set out above was taken from his testimony. He testified, among other things, that he was seated immediately behind the bus driver; that he first saw the Ellison automobile when its horn sounded; that it was 150 to 200 feet distant from the bus at the time, and going at the rate of 50 miles an hour. He testified that the bus was going 30 to 35 miles an hour, and that the bus traveled from 25 to 30 feet from the time the brakes were put on until the impact, at

which time the bus's speed had been reduced to 15 to 20 miles per hour. That two to three seconds elapsed from the time he first saw the Ellison car until the collision.

The bus driver testified, among other things, that Ellison darted out of the southbound traffic, and was traveling at 60 miles an hour. Further, that his first reaction was to slow his bus, and go to the shoulder, but he knew it had rained the night before, and didn't know the condition of the shoulder; that he could have stopped the bus in 35 feet by exerting hard brake pressure; that he could have kept his bus two feet on the concrete and have left 8 feet for Ellison to get through. At the trial the bus driver testified that he never placed any of the wheels of the bus on the shoulder, but he admitted making a statement to the investigating officers at Ellington Field four days after the accident that he believed he had pulled both of his front wheels off of the pavement and left only one hind wheel thereon. He gave the time between when he first saw the Ellison car and the collision as about 1½ seconds.

A Deputy Sheriff made an official investigation at the scene of the accident after the injured parties had been removed. He was called by the Bus Lines, and testified from his record, including photographs. On cross-examination by plaintiffs he was asked and answered:

"Q. From this photograph, would you say, then, that the bus was at one time about—the right hand side of it, at any rate, was something like three feet off on the shoulder? A. It could have been, yes sir.

"Q. And that the bus then, after getting off on the shoulder, came back to the left into the highway? A. It shows that.

"Q. Was that your conclusion from observing the skid marks? A. That is true."

The Bus Lines predicates its appeal upon 18 points; Ellison predicates his appeal upon six points.

The Bus Lines first six points relate to errors which it is asserted were committed in the trial as between plaintiffs and the Bus Lines, namely, that the court erred in refusing to direct a verdict against plaintiffs, and in refusing motion for judgment notwithstanding verdict; that evidence was insufficient to support the jury's answers, and that said answers were against the great weight of evidence, in respect to special issues Nos. 3-13, and 29; that the bus driver owed no duty to plaintiff Mrs. Whatley, to foresee that Ellison would, after driving his automobile into the northbound traffic lane, continue driving therein, and into the bus; because the bus driver in good faith exercised his discretion to protect himself and his passengers after being placed in peril without fault of his own.

In response to Special Issue No. 1, the jury found that the bus was not being operated at a greater rate of speed than that at which a very prudent and cautious person engaged in carrying passengers for hire would have operated it under the same or similar circumstances. But in response to special issues Nos. 3-10, the jury found the bus driver failed to exercise that high degree of care of a very prudent person engaged in carrying passengers, in these particulars: (a) failure to keep his bus under proper control; (b) failure to keep a proper lookout; (c) failure to make such application of brakes; (d) failure to turn bus to right on the shoulder of the highway. The jury found each to be a proximate cause of the collision. 11. The bus driver turned bus to left immediately before collision. 12. Such turning to the left was not that high degree of care, etc., and 13, which was a proximate cause. 29. That as between Mrs. Whatley and the bus driver, the bus driver was not acting in an emergency, as defined in the charge, namely, meaning "a condition arising suddenly and unexpectedly, and not proximately caused by any failure on the part of the bus driver to exercise that high degree of care that would have been exercised by a very prudent and cautious person, and which called for immediate action on the part of the bus driver, without time for deliberation."

We have concluded that, under the rules which govern in determining the sufficiency of evidence to sustain jury findings, we must overrule the points. In Davis v. Woolverton, Tex.Civ.App., 184 S.W.2d

659, 660, it was stated that these rules have become axiomatic:

"(1) The appellate court is bound by the jury's verdict, if there is any legal evidence to support it. Wixom v. Bowers, Tex.Civ. App., 152 S.W.2d 896.

"(2) The evidence must be viewed most favorably toward the appellees in so considering motions of appellants for peremptory instruction before, and for judgment notwithstanding, after the jury's verdict. National Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W.2d 828, writ refused."

■■ According to Ellison's testimony, another automobile preceded him into the northbound traffic lane. The jury could have legitimately inferred that, had the bus driver been exercising that degree of care he owed his passengers, or even ordinary care in keeping a proper lookout, he would have seen the movement of Ellison's automobile and the automobile he followed as it was made, and that the bus driver could have seen the tops of both automobiles approaching in the northbound traffic lane. Without taking up each of aforesaid Special Issues from the evidence set out above, we have concluded that there is legal evidence to support the jury's answers thereto. It was not necessary for the plaintiffs to sustain every ground of negligence submitted to the jury, in order that the judgment be sustained. See West Texas Coaches v. Madi, Tex.Com App., 26 S.W. 2d 199, 202. As to the issues on discovered peril, the jury could have inferred that after discovering Ellison's position of peril, the bus driver did nothing to avoid it except make a gradual application of his brakes.

To be sure, the bus was in the proper position for northbound traffic. And it is the contention of the Bus Lines that the law required Ellison, who was southbound, to get out of the northbound traffic lane, and clear the bus driver's side of the road. And if he could not get back on the west side of the highway, he was bound to take to the east shoulder, or ditch, if necessary. In support of such position, the Bus Lines cite such cases as Houston & T. C. Ry. Co.

v. O'Donnell, 99 Tex. 636, 92 S.W. 409; Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 199, 59 S.W. 533; Aranda v. Texas & N. O. Ry. Co., Tex.Civ.App., 140 S.W. 2d 236. In the O'Donnell case, the enginemen were ignorant that O'Donnell was deaf, and the court held they had the right to believe he could hear, and, though they saw him near the railroad track, that they had the right to presume he would make a proper use of his faculties and get far enough from the track to insure his safety. "They were not required to anticipate that he would be guilty of an act of negligence, either by remaining in danger, if he was so, or by putting himself in danger." [99 Tex. 636, 92 S.W. 410] In short, the enginemen were not aware that O'Donnell was deaf, and so were not aware that he was in danger.

■■ But where there is a realization of a person's position of peril, "The issues arising from primary negligence and contributory negligence become immaterial in passing on the issue of liability under this rule. The basis for recovery rests upon humane principles and public policy, and not upon the negligence or dereliction of the injured person. * * * In order to sustain a recovery, it must be shown that the driver actually discovered deceased and realized his perilous position in time to have averted the injury." Parks v. Airline Motor Coaches, 145 Tex. 44, 48, 193 S.W.2d 967, 969. Rules as to right of way are invaluable as a means of avoiding collisions, and had Ellison obeyed them the collision in question would not have happened. But the bus driver was confronted with an imminent collision. He owed the duty to his passengers to do what a very prudent and cautious person would do under the same or similar circumstances. And that was the standard employed by the court in the submission of the issues complained of above.

■ It is the contention of the Bus Lines that, as between itself and plaintiffs, plaintiffs are bound by the testimony of Lt. Smith, whose deposition, though taken by the Bus Lines, was offered in evidence by plaintiffs. Smith thereby became plaintiffs' witness, and by placing him on the stand

they vouched for his credibility. 17 Tex. Jur. 928. But plaintiffs did not vouch for the inerrancy of his evidence. See Whitefield v. Whitefield, Tex.Civ.App., 160 S.W. 2d 306; Aetna Life Insurance Co. v. Love, Tex.Civ.App., 149 S.W.2d 1071, 1075. In the last cited case, it is said, "One who calls a witness vouches for his credibility and cannot ordinarily impeach him to the extent of attacking his credibility. He does not vouch for his infallibility and constitute him one incapable of being mistaken." If the rule were otherwise, it would ordinarily be impossible to use more than one witness to a side because of the well known fact that no two witnesses ever agree in every detail with respect to any event.

In Thurmond v. Pepper, Tex.Civ.App., 119 S.W.2d 900, we modified our original opinion on rehearing. Whether a person who was rendered incapable of exercising ordinary care, because put in terror through the negligence of a wrongdoer, would be held accountable to the wrongdoer for failure to exercise ordinary care to avoid injuring said wrongdoer under the doctrine of discovered peril, seems to be a question that has never been presented for decision. In the motion for rehearing in the Pepper case the principle passed on in Graham v. Hines, Tex.Civ.App., 240 S.W. 1015, writ refused, was referred to. In any case, it does not appear that any finding was obtained from the jury relative to the bus driver's state of mind, etc. We do not pass on whether it would have been proper to submit such an issue.

The Bus Lines' points 7-11 bear on the suit as between itself and Ellison. Said points urge that the court erred in refusing the Bus Lines' motions for directed verdict; and for judgment notwithstanding the verdict; and urge the insufficiency of the evidence to support the jury's answers; and that said answers were against the great weight of the evidence in respect to Special Issues No. 27, 49-58 and 61-64; and urge that the evidence established that Texas Bus Lines should recover against Ellison for full indemnity by reason of Ellison's active and affirmative negligence, whereas Bus Lines' negligence, if any, was passive.

In response to Special Issues Nos. 49-58, the jury found that the bus driver failed to exercise that degree of care which a person of ordinary prudence would have exercised under the same or similar circumstances in the following particulars: (a) proper control; (b) proper lookout; (c) proper application of brakes; (d) in failing to turn the bus to the right onto the shoulder of the highway. On Special Issues Nos. 61-64, the jury found against the Bus Lines in the issue of discovered peril. On Special Issue No. 27, the jury found that as between the bus driver and Ellison, the bus driver was not acting under an emergency. The jury convicted Ellison of active negligence in answer to various special issues.

■ The evidence has been set out above. As noted above, the jury convicted the Bus Lines of active negligence in that its bus driver failed to turn the bus to the right just before the collision. Based on the rules discussed under Bus Lines' points 1-6, we are unable to set the jury's findings aside.

■ With reference to Texas Bus Lines' attack on the sufficiency of the evidence to sustain the jury's findings in favor of Ellison on discovered peril, we cite Vontsteen et al. v. Rollish et ux., Tex.Civ.App. 133 S.W.2d 589, writ refused. And we refer back to what we said above, relative to discovered peril. At this point we will discuss Ellison's contention that the jury's findings in his favor or discovered peril show that his negligence is less culpable than the negligence of Bus Lines; and that therefore he is entitled to be awarded full indemnity against Bus Lines, under the authority of Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301.

■ R.C.S. Art. 2212 provides in substance that where a judgment is rendered against two or more tort-feasors (except in cases wherein the right of contribution or indemnity is given by statute or common law), a defendant, upon payment of the judgment, shall have a right of action over for contribution, etc. The Supreme Court, in the case of Wheeler v. Glazer, supra, said, at page 345 of 137 Tex., at page 451 of 153 S.W.2d:

"While the law does not seem to take note of the quantity of the negligence of the different joint tort-feasors as a reason for authorizing the one least negligent to have contribution from the other, the authorities do recognize a distinction in the quality of their negligence. * * * 'Thus, where the parties are shown not to have been equally guilty, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators.'"

 It is the position of Ellison that the jury, in finding in his favor on the discovered peril issues, found that the Bus Lines was guilty of wanton negligence, i. e., found the legal equivalent that the bus driver was so reckless as to amount to the intentional collision with Ellison. While we must hold that the evidence was sufficient to support the jury's findings in favor of Ellison under the Texas decisions, we are very confident that the evidence was insufficient to go to the jury on an independent issue that the bus driver intentionally collided with Ellison. We are in accord with the holding in Kimbriel Produce Co., Inc., v. Mayo, Tex.Civ.App., 180 S.W.2d 504, 508, writ refused, W. M. Accordingly we overrule Ellison's stated contention.

Texas Bus Lines' points 12 and 13 complain of the court's charge in submitting Special Issues Nos. 1–13, and No. 28. That same unduly and unnecessarily emphasized plaintiffs' theory of their case and the duty of Bus Lines to plaintiffs; and further complain of the court's refusal to submit said Special Issues in the form suggested by Bus Lines.

Preceding the Special Issues, the court's charge contained the following:

"Negligence generally is the failure to use ordinary care. Ordinary care is that degree of care which an ordinarily prudent person would use in the same or similar circumstances.

"Negligence as between the Texas Bus Lines and Robert M. Ellison, and as between Mrs. Gertrude Whatley and Robert M. Ellison, is the failure to use ordinary care.

"Negligence as between Mrs. Gertrude Whatley and the Texas Bus Lines is the failure to exercise that high degree of care which a very prudent and cautious person, engaged in carrying passengers for hire, would exercise under the same or similar circumstances."

The court declined Bus Lines specially requested charge, "As between defendant Texas Bus Lines and the defendant Ellison, the driver of the bus owed no greater duty to protect plaintiff Mrs. Whatley than did the defendant Ellison."

As submitted, Special Issues Nos. 1, 3, 5, 7, 9, and 12, inquired whether the bus driver was in the exercise of that degree of care as would have been exercised by a very cautious and prudent person engaged in the carrying of passengers for hire under the same or similar circumstances, in the particulars inquired about.

 We must overrule the points. In view of the fact this was a three corner suit, a long and somewhat complicated charge was unavoidable. In connection with each special issue, inquiring whether the bus driver was exercising that degree of care which he owed Mrs. Whately in the particulars inquired about, it was necessary that the degree of care be in some way presented in each issue. It seems to us that it was less confusing to present the standard which the jury must follow in the issue submitted. See Lander v. Jordan, Tex.Civ.App., 87 S.W.2d 1109, 1110; Terrell Wells Health Resort v. Severeid, Tex. Civ.App., 95 S.W.2d 526, 533. And we fail to see that an issue so framed emphasizes either the affirmative or the negative side of the theory in connection with which the issue is submitted.

 Bus Lines' point 14 complains of the court's refusal to give its requested charge, "As between the defendant, Texas Bus Lines and defendant Ellison, the driver of the bus owed no greater duty to protect the plaintiff, Mrs. Whatley, than did the defendant Ellison". We have pointed out the form of the issues 1, 3, 5, etc., in discussing points 12 and 13. Special Issue No. 27, inquired if as between the bus driver and Ellison, the bus driver was act-

ing under an emergency, and in connection with the definition of emergency, and the jury was informed it meant a condition arising suddenly, etc., not proximately caused by failure on the bus driver's part to exercise that degree of care which an ordinarily prudent person would have exercised, etc. And, as submitted, Special Issues Nos. 47, 49, 51, 53, 55, 57 and the usual issues on discovered peril inquired whether the bus was being operated as it would have been operated by a reasonably prudent person under the same or similar circumstances, in the following particulars: speed; proper control; lookout; application of brakes; and in failing to turn the bus to the right to get it on the shoulder. We think the point should be overruled. The requested charge is a general one, and we do not believe that the requested charge was necessary to enable the jury to properly pass on the issues. As pointed out above, we believe the court followed the correct practice.

■ Bus Lines' points 15, and 16, assert that the court erred in admitting testimony by Ellison, over Bus Lines' objection, concerning medals awarded him in the Air Corps, and concerning air combat missions and his services in the Army. We must overrule the points. Without extending the length of this opinion by discussing whether the admission of evidence was error, because the record contains other evidence to the same effect, which was admitted without objection. "The error, if any, was therefore harmless. 3 Tex.Jur. p. 1258, and authorities there cited." Hough v. Grapotte, 127 Tex. 144, 146, 90 S.W.2d 1090, 1092.

■ Bus Lines' point 17 complains of the admission of testimony in evidence as impeachment of its witness Parker, Ellison's exhibit No. 1, being a purported plat of the scene of the collision. Mr. Parker was the Deputy Sheriff who made the official investigation at the scene of the collision after it occurred, referred to above. Mr. Parker denied having made the plat in question. Thereafter Captain Ellison testified that the plat had been given him

by Mr. Parker, and it was offered by Ellison for impeachment purposes. The objection made to the admission of the plat did not include that no proper predicate had been laid. We must overrule the point. See Berry v. Shepperd, Tex.Civ.App., 131 S.W.2d 282, 283.

Bus Lines' point 18 asserts that the damages awarded plaintiffs is so excessive as to show passion and bias in favor of plaintiffs, and prejudice against Texas Bus Lines.

The evidence shows that Mrs. Whatley is 38 years old; that she was not rendered unconscious by the collision, and got off of the bus by herself, and crossed over and sat on the bumper of an automobile, and then couldn't get up, and was taken to the hospital at Ellington Field, and was carried home from there by an ambulance, and in the meanwhile her doctor arranged for a hospital in Houston, where she remained for eight days. When she returned home she was confined to her bed for two weeks, and then for three weeks she was up and down. She had a continuous headache for eight weeks, and continued to have headaches and there had been no improvement for five or six months. She was unable to sleep well for six or eight months; and for several months she could not do any of her housework, and now is unable to wash and iron. She finds it necessary to rest an hour or two a day, and could not move much without pain, and suffers from nervousness. There is not as much strength in her right arm as before the collision. Her right hip and leg continue to hurt her. Her sister testified that Mrs. Whatley had not indication of physical disability before the collision, but since then has complained of headaches and of her back and hip, and stayed in bed quite a lot. A Mrs. Turner testified to the same effect, and that Mrs. Whatley worked hard before the accident.

A Dr. Burge testified from X-ray pictures he made that there were compression fractures in the sixth, seventh, eighth and eleventh thoracic vertebrae, which in his opinion were the result of the injury. In the cervical spine or neck, he noted an ab-

634

normal backward curve and a narrowed disc space between the fifth and sixth cervical vertabrae, which in his opinion were due to the injury, causing pressure on the spinal cord and was calculated to produce pain.

Dr. Lerner testified from the X-ray pictures, and in his opinion the condition he found in the back and neck of Mrs. Whatley was permanent, and that there was indication of the beginning of traumatic arthritis, and she would have difficulty as long as she lived. In the opinion of Dr. Brown there was permanent brain damage. He stated that the deformity of the spine was permanent and that the arthritis was likely to grow progressively worse.

 None of the foregoing evidence was disputed. The Bus Lines points out that there is no evidence that Mrs. Whatley had ever been under the treatment of a physician. There is, of course, no standard for determining whether a verdict is excessive. Ordinarily where an injury is sufficient to support a verdict of $20,000.00, there is a history of medical treatment. On the other hand, where it is undisputed that the injury is permanent, and the condition will become worse, the absence of medical treatment is probably without particular significance except to indicate that the pain is not insupportable. It not being so far made to appear to this court that the recovery accorded was shocking in amount, in view of the testimony as to the extent of Mrs. Whatley's injuries. The point is overruled.

As indicated above, Ellison has appealed from the judgment of the court denying him indemnity from Bus Lines for any recovery from him by plaintiffs. He predicates his appeal upon six points. The gist of his points is that the jury, by finding in favor of him, Ellison, on the issues' on discovered peril, found the bus driver was guilty of intentionally colliding with him on the legal equivalent; that such negligence is more culpable, or of a greater degree than mere active negligence. We overruled such contention above. And we overrule Ellison's points.

The judgment is affirmed