**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Joe CECIL, et ux., et al., Appellees.**

No. 3200.

Court of Civil Appeals of Texas.

Eastland.

Dec. 16, 1955.

Rehearing Denied Jan. 6, 1956.

McMahon, Springer, Smart & Walter, Abilene, for appellant.

Darrell Shelton, Brownwood, Sam Russell, Stephenville, for appellee.

COLLINGS, Justice.

This is a Workmen's Compensation case in which benefits are sought for the death of Harry Cecil, deceased, alleged to have been fatally injured on May 13, 1953, while in the employ of The Texas Brick Company. The trial was before the court without a jury. Judgment was rendered in the amount of $7,457.25 for Calvin Harry Cecil, the minor son, and Joe Cecil and Elizabeth Cecil, the father and mother of the deceased, against Texas Employers' Insurance Association, which brings this appeal.

The evidence shows that on May 13, 1953, Harry Cecil, deceased, and James Eoff, together with several other men, were employed by and working for The Texas Brick Company, a manufacturer of brick and tile. The manufacture of the tile or brick is completed by a machine known as a "pug mill." The machine, upon completion of the manufacturing process, delivers the brick or tile on a belt which is referred to as the "off bearing line" and which conveys the tile and brick to small rail cars on which these products are loaded. The deceased, Harry Cecil and James Eoff, together with four other men, were working on this "off bearing line" and it was their duty to pick up the brick or tile as it passed by their position on the "off bearing line" and place it on the rail cars. These employees, according to the evidence, while doing this work, frequently engaged in pranking, such as greasing each other's tiles. This would cause the tiles to be slippery and difficult to handle. James Eoff was either the first or second man on the "off bearing line" from the "pug mill" and Harry Cecil was the last or sixth man working on the line. On the date of Harry Cecil's fatal injury, James Eoff had greased one of the tiles. When the tile reached Cecil he picked it up and found that it was greased. He then made the following statement: "Whatever dirty s-o-b done that had better quit." Thereupon, Eoff, who had greased the tile, left his position and went about fifteen or eighteen feet to the other end of the "off bearing line" where Cecil was still working and struck him on the left jaw or ear. Cecil fell to the floor and became unconscious. He was carried to the hospital

and later died from the injury sustained. The trial court made the following findings of fact:

"IV. The deceased, Harry Cecil, on May 13, 1953, sustained an accidental injury in the course of his employment and while engaged in the furtherance of his employer's business for the said Texas Brick Company which accidental injuries resulted in his death.

"V. I find that at the time that Harry Cecil, deceased, was accidentally injured, which injury caused his death, the said Harry Cecil was not engaged in horseplay at the time of or shortly before his injury.

"VI. I find that at the time that Harry Cecil, deceased, received his injuries, he was not then or immediately prior thereto willingly engaged in horseplay.

"VII. I find that at the time that Harry Cecil, deceased, received the injuries resulting in his death, he was engaged in the furtherance of his employer's business in removing tile from the belt and placing it on the wagon and that he was struck on the side of his head and face while he was so engaged, and that such assault caused his death.

VIII. I find that Harry Cecil, deceased, did not willingly engage in or provoke an assault by his fellow-employees, and such assault that caused the death of Harry Cecil was made and committed upon him with reference to the manner in which the work he was doing for his employer was being done.

"IX. I find that the injuries received by Harry Cecil, while in the course of his employment were made without warning to the said Harry Cecil while he was then in the act of taking tile from the off-bearing belt and placing it on the wagon, when he received the blow on the side of his face and head without warning and without justification or provocation.

"X. I find that the injuries that caused the death of Harry Cecil were sustained while he was engaged in and while performing his duties and in the course of his employment with The Texas Brick Company and that his injury was of such kind and character and happened under such circumstances as had to do with and originated in his employer's business.

"XI. I find that Harry Cecil did not grease any tile on the day of his injury, and that the witnesses who so testified were mistaken. I find, however, that there had been an occasional tile greasing in the past among the employees (except the Mexican) working as off-bearers, which was known by their bosses, and while the record shows such bosses did not approve of it, they did nothing about it, and fired nobody as a result of it; nor was James Eoff fired on account of his action, but was invited by his employer to return to work after the occurrence, and did return and worked for about two weeks and thereafter quit of his own accord."

Appellant contends in numerous points that the court erred in finding that Harry Cecil, deceased, was not engaged in horseplay at and shortly before the time he received his fatal injury; that he was not at and immediately prior to the time of his injury willingly participating in horseplay, and that he did not grease any tile on the date of his injury. Appellant urges that there was no evidence, and that the evidence was insufficient to support such findings; that on the contrary, the evidence is undisputed and conclusive that Harry Cecil did willingly participate and engage in horseplay and did grease a tile on the day of his fatal injury, and that the altercation in which he was injured arose out of such horseplay, which was wholly unconnected with his employment with his employer, The Texas Brick Company.

After a careful examination of the evidence, considered in its most favorable light to the judgment, as we are bound to do, we have concluded that there is evidence and that the evidence is sufficient to support the findings complained of and that the points urging such complaints are not well taken. The evidence shows that Harry Cecil, at the time he was struck and fatally injured, was working on the "off bearing line" in the course of his employment with The Texas Brick Company and was at that time in the act of taking tile from the belt and placing it upon a wagon or rail car. The evidence indicates that while Cecil was so engaged in this work he was struck without any warning and without prior knowledge on his part that Eoff was making an attack on him. This evidence supports the finding that Harry Cecil was not engaged in and did not participate in horseplay at the time of his fatal injury, and that he was at the time engaged in work which was in the course of his employment and in the furtherance of his employer's business.

We cannot agree with appellant's contention that the evidence is conclusive that Harry Cecil, about an hour prior to the time of his injury, greased a tile which passed down the "off bearing line" to James Eoff. Appellant urges that testimony to this effect was given by the witness Alonzo Van Huss who was appellees' witness and that appellees are bound by his testimony. Although appellees could not attack the credibility of their witness, Van Huss, they were not barred from proving facts at variance with and in contradiction of his testimony. Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, 308 (Err. Ref.); Brumit v. Cokins, Tex.Civ.App., 281 S.W.2d 154; South Texas Coaches v. Eastland, Tex.Civ.App., 101 S.W.2d 878; Texas Bus Lines v. Whatley, Tex.Civ.App., 210 S.W.2d 626.

The physical facts and circumstances in evidence tend to contradict or render improbable the testimony of Van Huss to the effect that Harry Cecil greased a tile which passed down the "off bearing line" to James Eoff. Although some of the witnesses testified that Eoff was the second man on the "off bearing line" there is evidence to the effect that he was the first man next to the "pug mill." If he was first, as it may be assumed in support of the judgment, in order to grease a tile for Eoff, it would have been necessary to do it at the "pug mill" standing close by his side. Harry Cecil's place of work was fifteen or eighteen feet away at the other end of the belt and it is obvious that he could not have greased a tile for Eoff while working. Although there is evidence that any worker on the "off bearing line" could grease a tile at the "pug mill" during a five minute rest period which each worker took in his turn, it seems improbable that one would grease a tile for the worker next to whom he was standing who could not help but know who was guilty of the prank. Eoff could not, or at least did not, testify that Cecil greased the tile which he received. He only testified that he formed a conclusion as to who did. It is hard to see how Cecil could have greased a tile under these circumstances without Eoff knowing positively that he did. In our opinion, the testimony of appellees' witness, Van Huss, that Cecil greased the tile about an hour before his fatal injury is not conclusive and binding on appellees. This testimony considered with the other facts and circumstances in evidence, raised only a fact issue for determination by the trial court. However, even if it should be held that under the evidence appellees were bound by the testimony of their witness, Van Huss, to the effect that Cecil greased a tile on the day of his injury, this would not conclusively establish that Cecil was engaging in or willingly participating in horseplay at or immediately prior to the time of his fatal injury. There was ample evidence in support of the court's finding that when Cecil received his injury he was engaged in the furtherance of his employer's business in removing tile from the "off bearing line" and placing it on the wagon. When Cecil discovered the greased tile he used strong language to indicate his attitude that who-

ever had greased the tile "had better quit." Under this evidence the fact that Cecil might have greased a tile about an hour before his injury would not conclusively establish that he was willingly engaging and participating in horseplay at the time of his injury.

In other points appellant contends that Cecil's injury did not arise out of his employment as contemplated by Article 8309, § 1, Subdivision 4, Vernon's Annotated Texas Civil Statutes. It is urged that the court erred in finding that the assault on Cecil and the injuries received by him had to do with and originated in his employer's business, and was with reference to the manner in which the work he was doing was being done. Appellant says that there was no evidence, or at least insufficient evidence, to support such findings; that the evidence is undisputed and conclusive that the assault on Cecil resulted from an entirely personal dispute between the parties and that the assault was provoked by Cecil.

The evidence does show that immediately prior to the altercation, Harry Cecil, upon discovering the greased tile, used abusive and obscene language concerning the person guilty of the prank. James Eoff, who had greased the tile, considered this language to be directed toward him. There is evidence to the effect that Harry Cecil and James Eoff were good friends; that Cecil had used language of a similar nature toward Eoff at some time prior to the day of the fatal injury, and that Eoff had warned Cecil not to do so again, "as it might catch him in a bad humor some day and he might hurt him." The language used by Cecil was of a nature calculated to cause resentment. Eoff considered the language to be directed toward him and did resent it, and by reason of this resentment, made the attack on Cecil. It

is also true, however, that when Harry Cecil used the language described on this fatal occasion he did so in complaining of the greased tile. He was, at the time, engaged in work which was in the course of his employment and the greased tile was an interference with his work. Under these circumstances we cannot hold, as a matter of law, that the assault on Cecil did not have to do with and originate in his employer's business. Although the unfortunate nature of the language used may have caused Eoff to make the assault, still Cecil was, at the time, stating his complaint at the interference with his work because of the greased tile. He had the right, if not the duty, to complain about such an interference. The reason for the assault may have been personal to Eoff but was not necessarily personal to Cecil. With him, it involved a complaint about an interference with work which he was doing in the course of his employment. An assault and injury which results from a controversy over interference with an employee's work is connected with the performance of his work and is a risk incidental to his employment. American General Ins. Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788, 790. The altercation here involved arose over Cecil's complaint about an interference with his work and it is immaterial that in making such complaint, he used the language shown by the evidence or that Eoff had previously objected to his use of similar language. The assault arose out of and originated in the course of Cecil's employment and appellees were entitled to recover compensation for his resulting death. Associated Employers Lloyds v. Groce, Tex.Civ.App., 194 S.W.2d 103, 107 (N.R.E.); Commercial Standard Ins. Co. v. Austin, Tex.Civ.App., 128 S.W.2d 836 (Writ. Dis. Judg. Correct).

The judgment of the trial court is affirmed.