James Edward HAWKINS, Appellant,

v.

J. S. MAXFIELD, Appellee.

No. 15453.

Court of Civil Appeals of Texas.

Dallas.

Nov. 14, 1958.

Sanders & Stanford, Canton, for appellant.

Enoch G. Fletcher, Grand Saline, for appellee.

YOUNG, Justice.

The suit of Hawkins as plaintiff in trial court was for the sum of $4,875 allegedly held in trust by appellee Maxfield but on deposit in defendant's account in First National Bank of Grand Saline; said bank being restrained from disposing of the money pendente lite. On trial to the court, judgment was rendered adverse to plaintiff. Messers. Elam and Youngblood, the attorneys representing him in the prior suit of Maxfield v. Bascom Giles, et al., had intervened, claiming an interest in any recovery; but Hawkins alone has appealed. Findings of fact and conclusion of law were filed by the trial court at instance of plaintiff.

Factually, the cause of action asserted was this: That the plaintiff Hawkins had been jointly interested with Maxfield in the latter's cause No. 8631 against Bascom Giles Land Commissioner, et al., to establish a vacancy in school land surveys, Van Zandt County; that, pending 1957 negotiations for settlement of the litigation, Maxfield had represented to him that any monies received in final settlement would be equally divided between the two; later stating that the amount was to be $10,000 of which plaintiff would receive $5,000; that when the release to Maxfield of June 10, 1957 was executed by him reciting a consideration of only $1,500 he was led to believe that same constituted a one-half of the entire amount paid to Maxfield; discovering afterward that said defendant had been paid $11,250; bringing this action for the balance due and to which he would have been entitled but for the fraud and misrepresentations on part of Maxfield.

A further general background of matters and events leading up to the present controversy should be stated. Upon opening of the Van Oil Field in 1929 J. S. Maxfield became active in locating vacant lands in that area with a view of applying to the State Land Commissioner for oil and gas leases thereon, pursuant to Article 5421c, Vernon's Ann.Civ.St., Vacancy Land Act; making many surveys, investigations of deed rec-

ords and of the ground; filing an application with the County, Surveyor of Van Zandt County requesting a survey of described boundaries prior to the time of his 1946 marriage; being divorced from his wife Elizabeth in March 1950. While married to Elizabeth, Maxfield had filed application .wtih the Land Commissioner of the General Land Office for a survey of the areas in question for determination of vacancy; expenses of filing and surveying, as he said coming from monies earned before the marriage. Upon rejection of the application in 1947, he filed suit No. 8631 against Bascom Giles Commissioner seeking to compel that official to recognize a vacancy; the cause naming some eight hundred parties defendant inclusive of Pure Oil Company, an extensive lease holder; Maxfield himself assigning two-thirds of his claim to others who intervened.

The 1950 divorce of Maxfield and wife Elizabeth did not adjudicate their property rights relative to the pending suit No. 8631; she intervening therein; later marrying Hawkins who became a party pro forma. In 1955 she died, the couple having made mutual wills leaving "all we own and possess" to the one surviving. Hawkins then filed amended intervention in the general vacancy suit, asserting that the interest so devised to him had been community property acquired during marriage of Elizabeth to Maxfield, i. e., a one-half interest in the pending action instituted by Maxfield against Giles, Land Commissioner, Pure Oil Company, and many others.

In April 1957 upon a hearing of the intervention of Hawkins it was dismissed from the main suit without prejudice to institution of a separate action; and sometime later, according to the court's findings, the suit of Maxfield was dismissed on "ground that it had not been properly prosecuted". At this juncture, representatives of Pure Oil Company advised the attorneys for Maxfield and intervenors that if no appeal was to be taken from said order of dismissal the sum of $60,000 would be paid in settlement of the entire litigation; requir-

ing however full releases from all claimants inclusive of a release from Hawkins to Maxfield relative to the latter's interest in said settlement, then approximated at $15,-000 (later scaled to $11,250.00). Releases by all claimants to the Pure Oil Company were duly executed and the same are not here involved. Neither does appellant seek to set aside his release to Maxfield; praying for judgment only for a one-half of the amount paid in that settlement to Maxfield, relying on the latter's alleged representations that no more than $3,000 was received instead of the true amount of $11,250 as plaintiff later discovered.

As a basis for holding that plaintiff had no right of recovery against defendant the court concluded that "as the suit was dismissed and no appeal taken that no interest was ever acquired by Maxfield in any land or any right to any vacancy. That no property rights ever vested in the community estate of J. S. Maxfield and Elizabeth Hawkins. That J. S. Maxfield was not, in any way indebted to James Edward Hawkins or the estate of Elizabeth Hawkins when the release to Maxfield was signed by Hawkins and no consideration passed from Hawkins to Maxfield; that if Hawkins ever had any interest he transferred it to the Pure Oil Company when he signed the release and transfer to them." The court found in such connection that Hawkins had signed both releases on representations of his own attorney that the $1,500 settlement "was the best they could do for him." These further court findings are quoted: "That J. S. Maxfield began working on the vacancy in 1931, and that he worked intermittently on it for 15 years before he married Elizabeth Hawkins; that he spent much time and money on his effort to locate a vacancy before he married Elizabeth. I further find that all of the expense money spent by Maxfield in locating said vacancy and in paying all the required filing fees was paid out of the separate funds of J. S. Maxfield. I find that after Maxfield and Elizabeth were divorced in 1950, Maxfield continued to work on said law suit and that James Edward Hawkins

never did anything towards the winning of said suit."

■ The appeal is on a statement of facts additional to the court's findings and conclusion. Here appellant points to various findings as being without support in the record; and manifestly in such particulars we must follow Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156, 158, "that there is nothing in the rules which provides that in a case tried before the court without a jury the findings of fact are conclusive on appeal when a statement of facts appears in the record."

Appellant's points of appeal are as follows: The court's error. "(1) in holding that no property rights ever vested in the community estate of J. S. Maxfield and Elizabeth Hawkins; (2) in finding that appellee individually assisted in prosecuting the vacancy suit; (3) in finding as a conclusion of law that no consideration passed from Hawkins to Maxfield."

The general vacancy suit of Maxfield against the Land Commissioner and others was not tried on its merits and we may assume by the substantial sum paid by Pure Oil for these releases that appellee's pleadings in that case reflected sufficient elements of a cause of action under Article 5421c V.A.C.S.; in other words, constituting a chose in action accruing during the marriage of Maxfield and the wife Elizabeth as community property; having such actual or potential existence as that upon divorce her one-half interest was assignable by will to the successor husband Hawkins. In consequence we may further agree with appellant's assertion that consideration passed from Hawkins to Maxfield in the execution of the release in question. But in our opinion said points one and three are not controlling. He pleads "that he was induced to execute said releases by the fraud and misrepresentations of the defendant that plaintiff would receive the exact and same amount as the defendant; that he relied on these representations by the defendant in

signing said instruments" and thereby entitled to an equal share in the $11,250 payment to Maxfield. Throughout his entire testimony these charges were categorically denied by defendant. It was obviously defendant's position that the community interest of Elizabeth Hawkins acquired during the four-year period of their marriage was at most inchoate and limited; that at least it should be charged with the reasonable value of the time, labor and expense incurred by him prior to the marriage and after the 1950 divorce; in defendant's testimony calculated as amounting to a very considerable sum. The court's implied findings were consistent with this view.

■ In point two appellant contends that above line of testimony should be wholly disregarded; Shirley Peters, Maxfield's attorney having testified that his client gave no assistance in his prosecution of the vacancy suit, save possible procurement of ten or fifteen certified copies of instruments from the Deed Records; appellee being bound by the testimony of this witness. The point is overruled. Maxfield's testimony, though in conflict with that of his counsel concerning expenses, time consumed and value thereof in aid of this lawsuit prior to and following the four-year marital status, had probative force. As stated in Texas Employers Insurance Ass'n v. Cecil, Tex. Civ.App., 285 S.W.2d 462, 465: "We cannot agree with appellant's contention that the evidence is conclusive that Harry Cecil, about an hour prior to the time of his injury, greased a tile which passed down the 'off bearing line' to James Eoff. Appellant urges that testimony to this effect was given by the witness Alonzo Van Huss who was appellees' witness and that appellees are bound by his testimony. Although appellees could not attack the credibility of their witness, Van Huss, they were not barred from proving facts at variance with and in contradiction of his testimony. Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, 308 (Err. ref.); Brumit v. Cokins, Tex.Civ. App., 281 S.W.2d 154; South Texas Coaches v. Eastland, Tex.Civ.App., 101 S.W.2d

878; Texas Bus Lines v. Whatley, Tex.Civ. App., 210 S.W.2d 626."

The trial court made no findings on plaintiff's claim of fraudulent representations as testified to by him; but we cannot resolve that issue in his favor as a matter of law in face of defendant's unequivocal denials. On the other hand, Judge Dawson *did* find that appellant relied on his own attorneys when settling his interest for $1,-500; at least the finding has some support in the record. "There is a clear distinction between the nature of presumptions that may be indulged in support of a judgment when the court tries the facts and when they are tried by a jury. The court may never indulge in presumptions of fact findings to support a judgment involved in issues upon which a jury must pass. But the rule is different if the facts are to be determined by the court. In such case any doubts as to the facts raised by the evidence, and any view of the law the court could have applied under the pleadings and the evidence, will be resolved in support of the judgment." 3–B Tex.Jur. p. 378.

On careful review of this record the judgment is in all respects affirmed.