**WORTH TOOL & DIE COMPANY,**
Appellant,

v.

**ATLANTIS ELECTRONICS CORPO-
RATION, Appellee.**

No. 16643.

Court of Civil Appeals of Texas.

Dallas.

Dec. 17, 1965.

Rehearing Denied Jan. 28, 1966.

Harris & Ball, Arlington, for appellant.

Andress, Woodgate, Richards & Condos and Shank, Irwin, Chester & Conant, Dallas, for appellee.

BATEMAN, Justice.

The appellee Atlantis Electronics Corporation sued the appellant Worth Tool & Die Company for title and possession of certain personal property valued at $46,668.-84, and had the property seized under writ of sequestration. The answers of the jury to the special issues submitted to them were favorable to the appellant, but the court rendered judgment for appellee *non obstante veredicto*. By two points of error on appeal the appellant contends that there was a jury issue as to ownership of the property, which was resolved in its favor, and that it was entitled to judgment on the verdict.

■ The sole task of the trial court was to determine which of the parties owned the property, no other right of possession being claimed. At the time the suit was filed and the writ levied the property was in possession of appellant, which fact alone gives rise to the inference that appellant had a legal right to such possession. Possession has even been held to be prima facie evidence of ownership. 46 Tex.Jur. 2d, Property, § 8, p. 473; Maberry v. First Nat'l Bank of Littlefield, Tex.Civ. App., 351 S.W.2d 96, no wr. hist.; Bullard v. Oatman, Tex.Civ.App., 271 S.W. 422, no wr. hist.; Cook v. Kern, Tex.Civ.App., 277 S.W.2d 946, affirmed 155 Tex. 360, 287 S.W.2d 174.

■ The burden was therefore clearly upon appellee to prove its alleged ownership of the property. The court in rendering the judgment *n. o. v.* must have concluded that the evidence established appellee's ownership as a matter of law.

■ In reviewing this conclusion it is our duty to consider the evidence in the light most favorable to appellant, disregarding all conflicts in the evidence, and indulging all reasonable intendments deducible from the evidence in favor of appellant; and to affirm the judgment we must find that there was no evidence of probative force to support the jury's finding. 4 Tex.Jur.2d, Appeal and Error—Civil, § 841, p. 407; Zachry v. McKown, Tex.Civ.App., 326 S.W.2d 227, wr. ref. n. r. e.; Whaley v. Peat, Tex.Civ.App., 377 S.W.2d 855, wr. ref. n. r. e.; Wilderspin v. Bewley Mills, Inc., Tex.Civ.App., 298 S.W.2d 636, wr. ref. n. r. e.; Texas Bus Lines v. Whatley, Tex.Civ.App., 210 S.W. 2d 626, wr. ref. n. r. e.

Appellee had a contract to furnish 3,083 trailers to the United States Government, and wrote a letter dated June 4, 1962 to appellant which stated in part: "This is to advise that at the present time it is the intention of Atlantis Electronics Corporation to utilize Worth Tool & Die Company *as a supplier* of the following items to be used in construction of 3,083 M105A2 Trailers:" After listing the different items to be supplied, with the unit price of each, the extensions thereof and a total price of $120,292.40, the letter continued: "The above listed items shall be *supplied* in accordance with and/or subject to all the appropriate drawings and specifications," etc. (Italics ours.) Following appellee's signature to the letter there appeared the following: "ACCEPTED AND AGREED TO this 4th day of June, 1962: WORTH TOOL & DIE COMPANY, By MILTON

DRESKIN, Partner." This letter was then attached to a document on a printed form entitled "PURCHASE ORDER," which appears to have been "issued to" appellant and shows the "total amount" to be $120,292.40. The "purchase order" does not specifically refer to the letter attached thereto and does not set forth otherwise what is being purchased by appellee from appellant; and nowhere in either the letter or the purchase order is it specifically provided who shall furnish the materials or dies to be used by appellant in "supplying" the items mentioned in the letter, nor who shall own the materials and dies during the process of fabrication. It was shown that shortly after appellant began work under this arrangement its workmen walked off the job and the work ceased, whereupon appellee brought this suit and had the sequestration levied on all the material and dies in the possession of appellant.

The only evidence offered by appellee as to ownership of the materials and dies was the testimony of Gene Ashley, Vice-President and General Manager of appellee, who had signed the above mentioned letter of June 4, 1962. He testified that appellee "was to" purchase the raw material and have it shipped into appellant's plant and that "Atlantis was to pay for it." When asked who the dies belonged to he said: "Well, the dies, upon completion, were to belong to Atlantis." When asked who paid for them he said: "Atlantis. They were in the process of paying for them. I don't think that they had paid for all of them at the time that the job was shut down," but that Atlantis (appellee) was obligated to pay for them. There was no evidence as to who paid for the materials used.

After testifying that he had made the affidavit in sequestration and had furnished the list of materials, parts and dies attached thereto, he was asked if he knew that all of the items in that list belonged at that time to appellee; to which he replied: "The only way I could answer that was to assume that they had, by receiving the invoices on the materials; as a matter of fact, as far as me making the statement that I personally had checked those items off of that list, I did not." Then followed these questions and answers:

"Q. Well, was steel, the raw materials here, the steel which had been purchased by Atlantis and shipped to Worth?

"A. Per invoice.

"Q. And were these parts and dies also parts and dies which had been fabricated for and charged to Atlantis?

"A. Per invoice."

He testified on cross-examination that the material was never shipped to Atlantis but was shipped to appellant. He further said that he was not testifying that appellee bought the material that the dies were made out of; that appellant made the dies and that not all of them were paid for. When asked if he knew that all of the material that was picked up by appellee was paid for by it he said: "No, I don't know it. I assumed that it was. I don't—I don't know that it was." He further testified that he did not buy any die material for appellant and that when the sequestration was levied they picked all of the material up and cleaned the place out. When asked by appellant's attorney on cross-examination who owned the dies at the time they were being made he said: "Well, you owned them until they produced a part." He further testified that he had knowledge of the fact that appellant "went on the open market and bought metal," which he supposed was part of the metal that was seized under the sequestration. He further testified that appellant directed "almost 100 percent" what materials were purchased; that any of the steel that was ordered by him or anyone working for him was ordered for appellant.

On redirect examination he testified that he thought that appellant had purchased some of the dies from another supplier,

being unable to handle all of the dies in its own plant, and that those particular dies had not been paid for, appellee having to pay for some of them. On recross examination he said that appellee had never actually paid for the dies as such, having only made payments on the contract; that the metal seized under the writ had been completely altered by appellant and exceeded by hundreds of times the cost of the metal; and that at the time of the sequestration part of the metal seized had not been shipped to appellant but that appellant had to go out on the open market and buy it.

■ We think it obvious from this testimony that a jury question was raised as to ownership of at least some substantial part of the personal property in question. Appellee is inclined to discount the significance of these purchases by appellant, speaking of them as "picayune purchases on the local market," but we find nothing in the record to indicate the size or extent or value of such purchases. And while both the "purchase order" and the letter attached thereto are silent as to ownership of the materials and dies during manufacture or fabrication, and prior to delivery to appellee of the finished products, the letter does speak of appellant as a "supplier" of the finished products and provides that such products shall be "supplied" by appellant, all of which would indicate an intention that appellant would be the owner of the materials, dies and tools utilized in making ready for delivery the items to be so "supplied." At least, this is an inference or intendment reasonably deducible from the evidence which the jury was entitled to make and which we are enjoined to indulge in appellant's favor in reviewing a judgment *non obstante veredicto*.

■ Therefore, we are forced to the conclusion that the court properly submitted the elements of ownership to the jury and had no authority to disregard the verdict in rendering judgment.

Therefore, we reverse the judgment and remand the cause with instructions to the trial court to render judgment for appellant on the verdict; this, of course, without prejudice to the right of appellee thereafter to take such action as may be available to it under the law looking to the vacating or reversal of such judgment on motion or appeal, as appellee may see fit. All costs heretofore incurred in the trial court and on this appeal are taxed against appellee.

Reversed and remanded.