Ronald **ENGLEBRECHT**, Appellant,

v.

**W. D. BRANNAN & SONS, INC.,** Appellee.

No. 8398.

Court of Civil Appeals of Texas,
Amarillo.

Oct. 15, 1973.

Rehearing Denied Nov. 12, 1973.

Richards & Ferguson (Floyd H. Richards), Dalhart, for appellant.

Lovell, Lyle, Cobb & Renfer (William E. Minkley), Dumas, for appellee.

REYNOLDS, Justice.

Ronald Englebrecht, a farmer in Sherman County, has appealed from an adverse judgment entered on a jury verdict in favor of W. D. Brannan & Sons, Inc., a Texas corporation, on its sworn account suit for aerial spraying services. Affirmed.

A recapitulation of the evidence is necessary to properly assess the appellate points of error. Following a conversation between Englebrecht and W. D. Brannan, who with his son John operated the aerial spraying business under the name of W. D. Brannan & Sons, Inc., Brannan agreed to, and successfully did, spray water grass and weeds on certain designated acres in Englebrecht's fields. Thereafter, Englebrecht called W. D. Brannan and requested that he come to Englebrecht's farm for consultation with him about the application of chemicals to an additional 295 acres of milo. As a result of this consultation and upon Englebrecht's instruction that he wanted the chemical Aatrex applied at the rate of a pound and a half per acre mixed with oil, an agreement was reached for the spraying at a cost of $5.10 per acre to Englebrecht. The spraying was done by W. D. Brannan and his son John.

Several days later Englebrecht went to the Brannans' office and paid for the first spraying, but he withheld payment for the spraying on the 295 acres because the weeds had not been killed. Disputed is the testimony of what actually was said during the conversation had at that time. It is W. D. Brannan's testimony that Englebrecht indicated that the chemicals had not killed the weeds and that Englebrecht did not intend to pay for the application. Upon Brannan's inquiring what Englebrecht wanted him to do about the situation, Englebrecht said that he could go out and look at the field, but that the weeds already had been cultivated out of it. Englebrecht's version of the conversation is that W. D. Brannan stated he would call Ciba-Geigy Chemical Company and see what they said about the chemical. Englebrecht specifically denied having told Brannan that the weeds already had been cultivated out of the crop. In neither recount of the conversation is there any indication of any request by Englebrecht that Brannan refly the field, nor any offer by Brannan to do so, nor any refusal by Brannan to respray.

Brannan did not respray. Several days later, Englebrecht retained the services of B & B Flying Service to respray the field of milo. The weeds were killed as a result of this aerial application. Englebrecht failed to honor the corporation's demands for payment for the aerial application, and this suit resulted, terminating in the appealed judgment for $1,504.50, plus interest and costs.

■ The first three of Englebrecht's eight points of error present the ultimate question of whether the court erred in failing to hold as a matter of law that Englebrecht's defensive plea of custom was an absolute defense. In this connection, Englebrecht contends that the testimony, and particularly that of W. D. Brannan, conclusively established the existence of a custom among aerial spray applicators in Sherman County that in the event the first application of chemicals did not kill the weeds, the aerial applicator would respray until satisfactory results were achieved or no charge would be made to the farmer. Englebrecht then argues that by application of the universal rule that established customs are a part of the contract unless the contract negatives them, the corporation is not entitled to judgment. It is manifest from the cited rule that for a custom to become a part of the contract, it must be an *established* custom; i. e., the custom must be shown to exist either as a matter of law or by a factual determination. An evaluation of the testimony to arrive at its legal effect is required.

The extracted portion of W. D. Brannan's testimony relied upon by Englebrecht shows Brannan's statements that, although he could not guarantee the chemical used, he never had refused to respray for any customer in the past and, had he had an opportunity, which he denied, to correct Englebrecht's complaint, he would have resprayed. Then, the following occurred:

"Q. If you had had an opportunity to respray this and had refused to do it would you still think you had the money coming?

"A. If I would have refused to do it? No, I wouldn't expect him to pay me no, sir."

Interrelatedly, the jury found that Englebrecht gave Brannan an opportunity to respray and to correct any complaint or defect, but there was no corresponding submission or finding that Brannan, having the opportunity, refused to respray.

Englebrecht and Wayne Lynch, the B & B Flying Service pilot who effectively resprayed the acreage, testified that the custom contended for by Englebrecht did exist in Sherman County. To the contrary, Hershel Francis, an aerial applicator, testified that if a farmer was not satisfied with an application, it was not the custom that the applicator would not be paid.

■ Neither the testimony of Brannan nor the evidence as a whole conclusively established that the custom depended on actually existed in Sherman County. Brannan's testimony did not establish there was a custom in Sherman County, but merely outlined his respraying policy, a part of which was non-payment if there were both opportunity and refusal to respray, which he denied were existent in this instance. This testimony, coupled with the other contradictory testimony of custom, simply raised a fact issue relative to Englebrecht's defensive plea. Englebrecht, by failing to request the submission of this independent ground of defense not conclusively established under the evidence, waived his defense of custom. Rule 279, Texas Rules of Civil Procedure, and the plethora of cases annotated thereunder citing the rule. The first three points are overruled.

■ Englebrecht attempts to attack, by his sixth and seventh points of error, the sufficiency of the evidence to sustain the jury's findings to special issue no. 2 that the aerial application was in a good, workmanlike manner, and to special issue no. 3 that a proper mixture of chemicals, oil and water was furnished. However, the sufficiency of the evidence to support the submission of, or the answers to, the special issues was neither interposed as an objection to the court's charge nor in Englebrecht's motion for new trial; therefore, the points are waived. Rule 374, T.R.C.P. Notwithstanding the waiver, a considerate review was made of this record evidence because Englebrecht, as an alternative to his motion for new trial, moved

for judgment non obstante veredicto on the assertion, inter alia, that the evidence does not support the special issue no. 3 finding. The review reveals undisputed, detailed testimony of the process of mixing the Aatrex, oil and water, and the manner of its application which, without further address to its particularization, is ample to support the jury's determinations of the facts inquired about in special issues nos. 2 and 3. Points six and seven are overruled.

By his eighth point of error, Englebrecht contends that the jury's answers to special issues nos. 2 and 3 are in irreconcilable conflict because the jury found, responsive to special issue no. 7, that the weeds were not killed. The argument, sans authorative citation, is that since the testimony is conclusive that a proper mixture would have killed the weeds, absent any other explanation for the failure to kill the weeds, the necessary conclusion is, contrary to one or the other or both of the jury's findings, that an improper mixture was concocted or an improper application was made. The argument is unpersuasive because the premise is incorrect. The evidence, in fact, demonstrates that conditions other than an improper mixture or application could have caused a failure to kill the weeds. Illustratively, there was W. D. Brannan's testimony that he had no control over the chemicals, and Englebrecht's acknowledgment that Brannan told him that Aatrex was erratic. Horace Sneed, a Sherman County farmer with experience in the use of Aatrex, testified that although Aatrex ordinarily is predictable, weather and soil conditions can affect its performance. Hershel Francis' opinion, based on his experience in using chemicals, was that Aatrex was more unpredictable than liquid 2–4–D. Moreover, under the state of the evidence, the jury made the unchallenged findings that the mixture applied was suitable for killing the weeds in the field and that the failure to kill the weeds was beyond the control of the corporation. Rather than being conflicting, the contested jury findings are compatible. The eighth point is overruled.

Englebrecht assigns error, in his fourth and fifth points, in the failure of the trial court to hold that, and to render a verdict in his favor because, the Brannans breached the statutory warranty of the Texas Business and Commerce Code or their common law warranty. The statutory warranty asserted is V.T.C.A., Bus. & C. § 2.315, providing that

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose,"

but inoperative, as stated in the explanatory comment 5,

" . . . If the buyer himself is insisting on a particular brand he is not relying on the seller's skill and judgment and so no warranty results."

The common law warranty relied on and referred to as a "defective performance" warranty is the implied warranty expressed in Mercedes Dusting Service, Inc. v. Evans, 353 S.W.2d 894 (Tex.Civ.App.—San Antonio 1962, no writ), in these words:

" . . . It is well settled that where 'a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use, * * *.' "

Cognizant that the corporation did not guarantee either the chemical or that the weeds would be killed, and recognizing that his designation of Aatrex as the chemical to be applied prima facie excludes the application of the statutory warranty, Englebrecht maintains that since he relied on the Brannans' skill and judgment in properly mixing and applying "suitable goods," both warranties became effective. Assuming arguendo, without deciding, that

the statutory warranty may be extended to and does apply to the specific contractual relationship between these parties, the efficacy of the warranties was foreclosed by the sustained jury findings that "suitable goods" were furnished and applied in a good, workmanlike manner. Points four and five are overruled.

The judgment is affirmed.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

In his motion for rehearing, appellant Englebrecht challenges the holding that the custom he relied on as an absolute defense was not established as a matter of law. The holding was responsive to, and should have been more explicit in answering, Englebrecht's first three points of error contention that appellee W. D. Brannan & Sons, Inc., introduced binding evidence legally proving the existence in Sherman County of the custom that the aerial applicator was not entitled to payment if the aerial application did not kill the weeds. The evidence designated in the motion for rehearing as legally binding on appellee is that testimony of Wayne Lynch, given in response to interrogatories propounded by Englebrecht's attorney but introduced at the trial by appellee, reading:

"Q. Do you know whether there was a fixed custom in Sherman County, Texas in 1971, in the aerial crop spraying business, concerning the payment by the landowner to the aerial crop sprayer for his services, in event the weeds were not killed, or controllably killed by the application of such chemicals?

"A. Yes.

"Q. If you have answered the last interrogatory in the affirmative, please state in your own words what was the custom in Sherman County, Texas, in 1971 concerning the payment by the landowner to the aerial crop sprayer, in the event the application of the chemicals did not kill the weeds. (Please answer in full.)

"A. The custom to my knowledge is that if you don't get a kill you don't get paid."

Also, there is designated the following testimony of the same witness given to the cross-interrogatories of, and introduced by, appellee:

"Q. When you and B & B Flying Service were engaged in the aerial crop spraying business in the summer of 1971, did you have a policy which provided that in the event the weeds were not killed, or controllably killed by the application of chemicals, that the landowner was not responsible to you or B & B Spraying Service for the payment of the bill for applying said chemicals?

"A. That is correct."

Appellant asserts, and cites cases stating, the proposition that since appellee introduced the quoted testimony, he is bound by it because he vouched for the credibility of the witness Lynch by introducing his testimony and cannot impeach him. From this propositional basis, Englebrecht argues that the custom was established as a matter of law. We disagree.

While the general rule is that, absent certain circumstantial exceptions not material here, a party may not impeach his own witness, the rule does not prohibit the production of, and the party is privileged to present, other witnesses to show either a different fact or the truth of a particular fact in contradiction of the factual testimony of the party's own witness. 1 McCormick & Ray, Texas Evidence §§ 631–636; Bell v. Currie, 404 S.W.2d 321 (Tex. Civ.App.—Amarillo 1966, no writ); Shinn v. Dillon, 306 S.W.2d 940 (Tex.Civ.App.—Fort Worth 1957, no writ); Texas Employers' Insurance Association v. Cecil, 285 S.W.2d 462 (Tex.Civ.App.—Eastland 1956, writ ref'd n. r. e.). Rather than being an attack on the credibility of the witness, the function of contradictory testimony is to show that the witness is in error on the particular point. 1 McCormick & Ray, Texas Evidence § 636.

Thus, appellee was not at liberty to introduce evidence attacking the credibility of its witness Lynch; however, appellee was privileged to introduce testimony which would serve to contradict Lynch's testimony of custom. In introducing the testimony of Hershel Francis to the effect that the custom did not exist in Sherman County, appellee produced testimony contradicting the testimony, but not attacking or impeaching the credibility, of its witness Lynch. It was this, together with the other, contradictory testimony bearing on custom that produced the conclusion that the defense of custom was not established as a matter of law but was an unresolved fact issue.

The remaining points of error contained in the motion for rehearing have been carefully considered. We have concluded that a correct and adequate disposition of each point was made in the original opinion.

Accordingly, the motion for rehearing is overruled.